AUTO CLUB GROUP INSURANCE COMPANY v BOOTH

Docket No. 290403. Submitted April 13, 2010, at Detroit. Decided August 31, 2010, at 9:00 a.m.

Auto Club Group Insurance Company brought an action in the Macomb Circuit Court against John A. Booth and Michael Bordo, seeking a declaratory judgment that a homeowner's insurance policy issued by Auto Club to Booth did not provide coverage for injuries received by Bordo when Booth shot him with a handgun that Booth knew had a loaded magazine but thought did not have a shell in the chamber. Auto Club conceded for purposes of a motion for summary disposition that the shooting was accidental, that Booth had not intended or expected injury to Bordo, and that the injury was covered under the "occurrence/accident" portion of the policy, but contended that coverage was excluded under the policy's criminal-act exclusion. Booth had pleaded no contest to a misdemeanor charge of careless, reckless, or negligent discharge of a firearm resulting in injury, MCL 752.861, and had been sentenced to probation. The court, Peter J. Maceroni, J., denied Auto Club's motion for summary disposition and granted summary disposition in favor of Booth and Bordo. The court applied the two-pronged test in *Allstate Ins Co v McCarn (After Remand)*, 471 Mich 283 (2004), and held that although Booth had committed an intentional act, a reasonable person would not have expected bodily harm to result when Booth pulled the trigger of what he thought was an unloaded gun. Auto Club appealed.

The Court of Appeals *held*:

1. Although Booth pleaded no contest to the charge of violating MCL 752.861, his no-contest plea alone did not provide conclusive proof that he committed a crime. Nevertheless, the facts that Booth admitted established that his conduct undisputedly constituted at least one criminal act. There was sufficient evidence to establish Booth's carelessness, which in turn was sufficient to establish a misdemeanor under MCL 752.861.

2. *McCarn* was a plurality opinion and not binding under stare decisis. Moreover, the criminal-act exclusion considered by the Supreme Court in *McCarn* was notably different from the criminal-act exclusion in Auto Club's policy because Auto Club's

policy did not contain the reasonable-expectation clause found in the policy in *McCarn*. The trial court erred when it applied the two-pronged test employed in *McCarn* to determine whether the exclusion in Auto Club's policy applied to the shooting by Booth. Instead the criminal-act exclusion contained in Auto Club's policy did apply to Booth's actions, and Auto Club was entitled to summary disposition.

3. The criminal-act exclusion was not contrary to public policy because the insurance policy language was clear and unambiguous and Auto Club was free to limit its liability. The order granting summary disposition in favor of Booth and Bordo must be reversed, and the case must be remanded for the entry of an order of summary disposition in favor of Auto Club.

Reversed and remanded.

*Hom, Killeen, Siefer, Arene & Hoehn* (by *Michael J. Schaefer*) and *Gross & Nemeth, P.L.C.* (by *Mary T. Nemeth*), for Auto Club Group Insurance Company.

*Femminineo Attorneys, P.L.L.C.* (by *David C. Femminineo*), for John A. Booth.

*Thomas P. Casey, P.C.* (by *Thomas P. Casey*), and *Bendure & Thomas* (by *Mark R. Bendure*) for Michael Bordo.

Before: M. J. KELLY, P.J., and TALBOT and WILDER, JJ.

WILDER, J. Plaintiff appeals as of right the trial court's order granting summary disposition in defendants' favor and holding that defendants were entitled to coverage under defendant John Allen Booth's homeowner's insurance policy. We reverse and remand for the entry of summary disposition in plaintiff's favor. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

This dispute concerns coverage for a personal injury that resulted from a shooting. According to deposition testimony, defendant Michael Bordo had been living at

Booth's home and paying rent for approximately six months. On the day of the shooting, Booth, Bordo, and Bordo's friends were socializing in the home. Booth, who admitted that he was intoxicated, entered into a conversation with Bordo about how much pain he could endure. During the conversation, Booth went to his gun safe and retrieved his automatic handgun. The ammunition clip, containing 10 shells, was in the pistol. Booth pulled back the slide, allegedly to make sure that the gun was not loaded, and saw that no shell was in the chamber. However, according to Booth, he inadvertently loaded a shell from the ammunition clip into the chamber when he released the slide mechanism. Booth walked into the kitchen and pointed the gun at the ceiling. Bordo could not see whether the gun contained an ammunition clip. Booth grabbed Bordo's left hand, held it against the kitchen table, and placed the barrel of the gun against Bordo's left wrist. Booth testified that he did not recall pulling the trigger, but admitted that he must have done so. Bordo did not see Booth pull the trigger, and did not immediately realize that he had been shot. Bordo sustained substantial and permanent damage to his wrist and hand.

Booth was charged with the felony of discharging a firearm while under the influence of alcohol resulting in a serious impairment of bodily function, MCL 750.237(3). He pleaded no contest to a reduced misdemeanor charge of careless, reckless, or negligent discharge of a firearm resulting in injury, MCL 752.861, and received a sentence of two years' probation.

Bordo filed suit against Booth, alleging that Booth negligently caused Bordo's injuries. Plaintiff then filed this action for a declaratory judgment and moved for summary disposition on the ground that Booth's homeowner's policy with plaintiff did not cover Booth's

actions. Plaintiff conceded for purposes of the motion that the shooting was accidental, that Booth had not intended or expected injury to Bordo, and that the injury was covered under the "occurrence/accident" portion of plaintiff's policy. Plaintiff argued, however, that regardless, coverage was excluded under the policy's "criminal act" exclusion. Pursuant to MCR 2.116(I)(2), the trial court granted summary disposition in favor of defendants. The trial court reasoned that the criminal-act exclusion in the instant policy contained language similar to the criminal-act exclusion language in *Allstate Ins Co v McCarn (After Remand)*, 471 Mich 283; 683 NW2d 656 (2004) (*McCarn II*), and that under the two-pronged test in *McCarn II*, while an intentional act was committed in the instant case, thus satisfying the first prong, the second prong of *McCarn II* was not satisfied because, in the trial court's judgment, a reasonable person would not have expected bodily harm to result when Booth pulled the trigger of what he thought was an unloaded gun. This appeal ensued.

Plaintiff argues that the trial court erred when it determined that plaintiff's criminal-act exclusion did not preclude coverage and further argues that plaintiff was entitled to summary disposition. We agree. We review summary disposition decisions de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Summary disposition is appropriate if the record contains no material factual issues and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10). We consider the entire record, examining the evidence in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). We also review de novo legal questions concerning the interpretation of insurance contracts. *Rory*, 473 Mich at 464.

When deciding an insurance-coverage issue, we must apply the terms of the policy. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999), citing *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). Unless the policy terms are ambiguous, we will enforce the policy as written. *Masters*, 460 Mich at 111. Here, neither party argues that the terms of the exclusion at issue are ambiguous. Accordingly, we apply the policy as written. *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007), citing *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353-354; 596 NW2d 190 (1999). "While exclusions are strictly construed in favor of the insured, this Court will read the insurance contract as a whole to effectuate the intent of the parties and enforce clear and specific exclusions." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). The insurance company has the burden of demonstrating that an exclusion applies. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161 n 6; 534 NW2d 502 (1995).

The relevant exclusions in plaintiff's policy provide:

Under [liability insurance coverages], we will not cover:

\* \* \*

5. bodily injury or property damage resulting from an act or omission by an insured person which is intended or could reasonably be expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is different from, or greater than, that which is expected or intended. . . .

\* \* \*

10. bodily injury or property damage resulting from:

a. a criminal act or omission committed by anyone; or

b. an act or omission, criminal in nature, committed by an insured person even if the insured person lacked the mental capacity to:

(1) appreciate the criminal nature or wrongfulness of the act or omission; or

(2) conform his or her conduct to the requirements of the law; or

(3) form the necessary intent under the law.

This exclusion will apply whether or not anyone, including the insured person:

(a) is charged with a crime;

(b) is convicted of a crime whether by a court, jury or plea of nolo contendere; or

(c) enters a plea of guilty whether or not accepted by the court[.]

Plaintiff asserts that Booth committed a criminal act, that the criminal-act exclusion in ¶ 10 applies to Booth's criminal act, and that summary disposition in its favor was warranted. While Booth pleaded no contest to a charge of violating MCL 752.861, his no-contest plea alone does not provide conclusive proof that Booth committed a crime. *Akyan v Auto Club Ins Ass'n*, 207 Mich App 92, 98; 523 NW2d 838 (1994); *Akyan v Auto Club Ins Ass'n (On Rehearing)*, 208 Mich App 271, 273-277; 527 NW2d 63 (1994). Nevertheless, the facts admitted by Booth establish that his conduct undisputedly constituted at least one criminal act.

MCL 752.861 provides, "Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor . . . ." The record plainly established that Booth had control of the gun and that the gun was discharged. The record also established that at the time

the gun was discharged, Booth's actions were at least careless. Booth testified that he knew that the gun had a loaded magazine. He also admitted that he was familiar with the firearm, which was his own, and that he had had weapons training in the military and in preparation for his license to carry a concealed weapon. Booth admitted that he was told on numerous occasions never to point a gun at someone and was also told to always assume that a gun was loaded. He also admitted that he decided to get his gun and hold the barrel against Bordo's wrist, acting on impulse, while intoxicated. Booth admitted that he must have pulled the trigger, although he did not remember doing so. Taken together, these facts were sufficient to establish carelessness, which in turn was sufficient to establish a misdemeanor under MCL 752.861.[1]

Bordo argues that the trial court correctly applied the two-pronged test in *McCarn II* and found that the exclusion did not apply on the basis that Booth had reasonably believed that the gun was not loaded. Bordo's reliance on the *McCarn II* decision is unfounded.

In *Allstate Ins Co v McCarn*, 466 Mich 277, 279; 645 NW2d 20 (2002) (*McCarn I*), the insureds sought coverage for an unintended shooting death that occurred on their property. The death occurred when two teenaged boys were playing with a shotgun. One boy, mistakenly believing that the gun was unloaded, pointed the gun at the other boy and intentionally pulled the trigger, killing him. The personal representative of the dead boy's estate sued the insureds. The Court in *McCarn I* addressed whether the shooting was a cov-

---

[1] We also note that Bordo acknowledged that "Booth's conduct in discharging a firearm he did not believe was loaded, was negligent and careless . . . ." Thus, Bordo admitted that even if Booth's actions were not intentional, they were still criminal under MCL 752.861.

ered occurrence. *Id.* at 282. In *McCarn II,* a plurality of our Supreme Court determined that coverage for the shooting was not excluded under the policy's criminal-act exclusion. The plurality found that the exclusion's language directed it to use a two-pronged test. "There is no insurance coverage if, first, the insured acted either intentionally or criminally, and second, the resulting injuries were the reasonably expected result of an insured's intentional or criminal act." *McCarn II,* 471 Mich at 289-290 (opinion by TAYLOR, J.). While the plurality determined that the first prong of the test had been met, it found that the second prong had not been met because the shooter believed that the gun was unloaded and thus believed the gun could not fire. *Id.* at 291.

Defendants argue that this case presents legally identical facts and thus the trial court's decision to find that plaintiff's criminal-act exclusion did not bar coverage was correct. However, plurality opinions in which no majority of the participating justices agree with respect to the reasoning for the holding are not generally considered authoritative interpretations that are binding under the doctrine of stare decisis. See *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976). Moreover, as plaintiff points out, the exclusion in *McCarn II* was significantly different from the exclusion at issue here. In *McCarn,* the pertinent criminal-act exclusion provided:

> "We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
>
> "a) such insured person lacks the mental capacity to govern his or her conduct;
>
> "b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or

"c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

"This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime." [*McCarn II*, 471 Mich at 289.]

Plaintiff argues that this "hybrid" criminal-act exclusion is notably different from plaintiff's "pure" criminal-act exclusion and that the trial court erred when it applied the two-pronged test in *McCarn II* to determine whether the exclusion in the instant case applied to the shooting. We agree. The exclusion in *McCarn II* was significantly different from the criminal-act exclusion here. Plaintiff's policy exclusion for criminal acts does not contain the reasonable-expectation clause found in *McCarn II*, and we conclude that it applies to Booth's actions.

Defendants also contend that, given the discussion in *McCarn II* concerning the purpose and societal benefits of insurance coverage, see *McCarn II*, 471 Mich at 292, this Court should find that the criminal-act exclusion in this case is overbroad, is against public policy, and should be construed to provide coverage for Booth's negligent, but unintentional conduct.

However, this Court has previously rejected this aspect of defendants' arguments, in a case discussing substantially similar exclusion language. See *Auto Club Group Ins Co v Daniel*, 254 Mich App 1; 658 NW2d 193 (2002). The injured party in *Daniel* also contended that public policy favored insurance coverage. *Id.* at 4-5. In explicitly rejecting that contention, this Court concluded:

The criminal act exclusion is not contrary to public policy because the policy language is clear and unambiguous and [the insurance company] is free to limit its liability. . . . We further note that, as a matter of public policy, an

> insurance policy that excludes coverage for a person's criminal acts serves to *deter* crime, while a policy that provides benefits to those who commit crimes would *encourage* it. [*Id.*]

Our Supreme Court has determined that "the explicit 'public policy' of Michigan is that the reasonableness of insurance contracts is a matter for the executive, not judicial, branch of government." *Rory*, 473 Mich at 476.

For these reasons, we conclude that the trial court erred when it granted summary disposition to defendants concerning the applicability of the criminal-act exclusion contained in Booth's homeowner's insurance policy. Plaintiff is entitled to summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.