# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUTO CLUB GROUP INSURANCE
COMPANY,

       Plaintiff-Appellee,

v

TIMOTHY E. JOHNSON, ROBIN JOHNSON,
NICHOLAS JOHNSON, ALEX MOLLOY, and
LAKE DIANE PROPERTY OWNERS,

       Defendants,

and

PAUL JOSEPH SULLIVAN,

       Defendant-Appellant.

UNPUBLISHED
June 8, 2017

No. 330669
Hillsdale Circuit Court
LC No. 2015-000037-CK

---

AUTO CLUB GROUP INSURANCE
COMPANY,

       Plaintiff-Appellee,

v

TIMOTHY E. JOHNSON and ROBIN
JOHNSON,

       Defendants-Appellants,

and

NICHOLAS JOHNSON, ALEX MOLLOY,
PAUL JOSEPH SULLIVAN, and LAKE DIANE
PROPERTY OWNERS,

       Defendants.

No. 330698
Hillsdale Circuit Court
LC No. 2015-000037-CK

---

-1-

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

Defendant Paul Sullivan sustained an injury on defendants Timothy and Robin Johnson's property on Lake Diane in Camden, Michigan. Timothy, Robin, Timothy and Robin's son, defendant Nicholas Johnson, and Sullivan's friend, defendant Alex Molloy, were present when the injury occurred. Sullivan filed suit against Timothy, Robin, Nicholas, Molloy, and defendant Lake Diane Property Owners.

Timothy and Robin had a homeowner's policy with plaintiff Auto Club Group Insurance Company and sought coverage from Sullivan's suit under the policy. Auto Club filed a complaint for declaratory relief against Timothy, Robin, Nicholas, Molloy, Sullivan, and Lake Diane Property Owners. Significantly, Auto Club alleged that Timothy and Robin were not entitled to a defense from or indemnification for Sullivan's suit. Auto Club then moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that policy exclusions 10 and 12 excluded coverage. The trial court granted Auto Club's motion. Later, it entered a final order dismissing the declaratory action.

Sullivan appeals as of right in case number 330669. Timothy and Robin appeal as of right in case number 330698. This Court previously consolidated the appeals.[1] We reverse and remand because there was at least a genuine issue of material fact as to whether exclusions 10 and 12 precluded coverage.

I. FACTS

Robin stated that she and Timothy purchased their property in 1993. They stayed in a camper on the property on weekends from May through September. Further, Robin testified that the property had a dock, and the couple had a pontoon boat.

Auto Club captive insurance agent Diane Drouin testified that Timothy and Robin purchased a homeowner's policy from Auto Club in February 2003. Part II of the policy governs liability insurance coverage. It states that Auto Club "will pay damages for which an insured person is legally liable because of bodily injury . . . caused by an occurrence covered by this Policy." Further, Part II states that Auto Club "will defend any suit with lawyers of our choice or settle any claim for these damages as we think appropriate," but "will not defend or settle: any suit unless it arises from an occurrence covered by this Policy; or after we have paid our Limit of Liability" for bodily injury. The policy then contains exclusions. Exclusion 10 states that the policy will not cover bodily injury resulting from a criminal act. Exclusion 12 states that the policy will not cover bodily injury arising out of an insured person's negligent supervision.

---

[1] *Auto Club Group Ins Co v Johnson*, unpublished order of the Court of Appeals, entered January 26, 2016 (Docket Nos. 330669, 330698).

-2-

Nicholas stated that he invited Molloy to a volleyball tournament near the property on the weekend of August 9 and 10, 2013. Molloy testified that he invited Sullivan and other friends. Sullivan stated that he did not know Timothy and Robin.

Sullivan was 18 years old on the weekend at the lake. Yet, Sullivan testified that he consumed alcohol that weekend. It is unclear who bought the alcohol Sullivan drank. Molloy, Nicholas, Timothy, and Robin brought alcohol to the lake property. It was unclear whether the alcohol was stored in the same location. Multiple witnesses also testified about Timothy and Robin's knowledge of Sullivan's drinking, as described more specifically below.

Sullivan testified that on the day of his injury, he took beer from coolers when Timothy and Robin were present and later drank beer in their presence. Specifically, he testified that he went to breakfast, returned to the property, grabbed beer, went to the volleyball tournament, drank beer at the volleyball game, returned to the property, and drank more beer.

Nicholas testified that, after the volleyball game, he borrowed a friend's speedboat to go tubing and brought the boat back to the lake property. Robin testified that the group then went down to the dock. Molloy testified that he and another male stood in the water tying tubes up to the speed boat. Timothy stated that he went up to the camper to put his swimsuit on.

Robin stated that the property's shoreline is "visibly shallow," and the depth changes throughout the year. Timothy explained that the water was only three feet deep at the deepest part of the year and is lowest in July and August. Molloy explained that the water came up to his mid-thigh.

Robin testified that she and Sullivan were sitting on the pontoon boat, placed on the side of the dock opposite the speedboat. She stated that Sullivan had a beer, denied knowing where he got the beer, explained that this was the first time that day that she saw a group member holding a can of beer, and stated that she told Sullivan to get rid of the beer.

Robin stated that Nicholas then asked Sullivan if he wanted to go tubing. Sullivan testified that he then exited the pontoon boat and got onto the dock on his way to the speedboat. Sullivan then dove from the dock into the water, head first, toward the two people standing in the water. As a result, Sullivan sustained a serious spinal cord injury.

Sullivan filed suit against Timothy and Robin, alleging a claim of negligence/gross negligence and a claim titled "Social Host." Timothy and Robin sought coverage from the suit under their homeowner's policy. Auto Club defended Timothy and Robin under a reservation of rights. Timothy and Robin then moved for summary disposition. The trial court granted the motion with regard to Sullivan's negligence claim and denied the motion with regard to the social host claim, in part. Auto Club filed suit for declaratory relief and moved for summary disposition, as explained above. The trial court granted Auto Club's motion.

## II. STANDARD OF REVIEW

We review de novo a trial court's conclusion whether an insurance contract is ambiguous, *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999), interpretation of a contract, *id.*, and determination whether a contract violates public policy,

*Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 721; 706 NW2d 426 (2005).

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party must specify issues for which there is no genuine issue of material fact and support the motion. MCR 2.116(G)(4). Then, the nonmoving party has the burden to provide evidence of a genuine issue of material fact. MCR 2.116(G)(4). The trial court then reviews the record in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. If a trial court finds "no genuine issue as to any material fact" and determines that "the moving party is entitled to judgment . . . as a matter of law," it should grant the motion. MCR 2.116(C)(10). We review a trial court's order granting summary disposition de novo. *Maiden*, 461 Mich at 118.

### III. EXCLUSION 10:  CRIMINAL ACTS

Appellants argue that the trial court erred in concluding that exclusion 10 applies and, therefore, erred in granting Auto Club's motion for summary disposition. Because there was at least a genuine issue of material fact as to whether it applied, we agree.

To determine whether an insurance company has a duty to defend and indemnify an insured in a civil action, we must analyze both the insurance policy and the substance of the allegations against the insured. See *United States Fidelity & Guarantee Co v Citizens Ins Co of America*, 201 Mich App 491, 493-494; 506 NW2d 527 (1993).

We use a two-step process to interpret an insurance policy. *Auto Owners Ins Co v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997). First, we determine whether the insured has coverage. *Id*.[2] Second, we determine whether an exclusion negates coverage. *Id*.

To do so, we read the insurance contract as a whole, giving terms their plain and ordinary meaning. *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005). We may use a dictionary to determine a word's plain and ordinary meaning. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). When interpreting the contract, we must determine if it is clear and unambiguous. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 206; 476 NW2d 392 (1991). A policy is unambiguous "if it fairly admits of but one interpretation." *Steinmann v Dillon*, 258 Mich App 149, 154; 670 NW2d 249 (2003). A policy is ambiguous if "its language can be reasonably understood in different ways," *id*., "two provisions irreconcilably conflict," *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 8; 792 NW2d 372 (2010) (internal quotations and citation omitted), or "a term is equally susceptible to more than a single meaning," *id*. (internal quotations, emphasis, alteration, and citation omitted). If ambiguous, we may consult relevant extrinsic evidence to determine the policy's meaning. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470-471; 663 NW2d

---

[2] Auto Club does not argue on appeal that Timothy and Robin would lack coverage but for the exclusions discussed in this opinion.

447 (2003). If we do so and still cannot determine the meaning of the contract, then we may construe any ambiguity against the policy's drafter. *Id.*

When specifically determining whether an exclusion applies, we enforce clear and specific exclusions. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). We strictly construe exclusions in favor of the insured. *Id.*

"[T]he duty to defend and the duty to indemnify are not determined solely on the basis of the terminology used in a plaintiff's pleadings." *United States Fidelity & Guarantee Co*, 201 Mich App at 493. Rather, we analyze the "substance" of the allegations and "the cause of the injury" to determine whether coverage exists. *Id.* at 493-494.

The duty to defend is broader than the duty to indemnify. *Radenbaugh v Farm Bureau Gen Ins Co of Mich*, 240 Mich App 134, 138; 610 NW2d 272 (2000). The insurer has a duty to defend the entire suit if the policy covers any allegation in the complaint. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 480-481; 642 NW2d 406 (2001). We resolve any doubt as to whether coverage applies in the insured's favor. *Radenbaugh*, 240 Mich App at 137-138.

In this case, exclusion 10 is not ambiguous. Exclusion 10 states that the policy "will not cover"

bodily injury . . . resulting from:

a. a criminal act or omission committed by anyone; or

b. an act or omission, criminal in nature, committed by an insured person even if the insured person lacked the mental capacity to:

(1) appreciate the criminal nature or wrongfulness of the act or omission; or

(2) confirm his or her conduct to the requirements of the law; or

(3) form the necessary intent under the law.

This exclusion will apply whether or not anyone, including the insured person:

a. is charged with a crime;

b. is convicted of a crime whether by a court, jury or plea or nolo contendere; or

c. enters a plea of guilty whether or not accepted by the court[.]

This Court has already determined that similar exclusions are not ambiguous. The Court in *Allstate Ins Co v Fick*, 226 Mich App 197, 199-203; 572 NW2d 265 (1997), analyzed an exclusion stating that an insurance company would " 'not cover *bodily injury* . . . resulting from: a) a criminal act or omission.' " (Emphasis in original.) It found the term "criminal acts" to be

unambiguous, relying on prior case law finding the term criminal to be unambiguous and *Random House Webster's College Dictionary* (1995)'s definition of the term crime as " 'an action that is deemed injurious to the public welfare and is legally prohibited.' " *Id*. at 203. Therefore, the exclusion was unambiguous. *Id*. at 202. The Court in *Auto Club Group Ins Co v Daniel*, 254 Mich App 1, 3-4; 658 NW2d 193 (2002), analyzed the ambiguity of a "criminal act exclusion" denying "coverage for 'bodily injury or property damage resulting from a criminal act or omission.' " It concluded that the exclusion was not ambiguous, specifically analyzing the term bodily injury. *Id*. at 4. We are bound by this authority. MCR 7.215(C)(2).

Timothy and Robin argue that the exclusion is ambiguous because the phrase "resulting from a. a criminal act or omission committed by anyone" is ambiguous. However, we can use a dictionary to clearly define this phrase. *Black's Law Dictionary* (10th ed) defines the verb result as "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion."

Additionally, exclusion 10 does not violate public policy. Appellants argue that the exclusion violates public policy because it is illusory and too broad, as it excludes coverage for Timothy and Robin even when *other* persons commit criminal acts. Insurance clauses are valid as long as they are clear, unambiguous, and do not violate public policy. *Daniel*, 254 Mich App at 4. Relatedly, an insurance policy is illusory if it is " 'so insubstantial' " that it " 'impose[s] no obligation' " on the insurer. *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 523 n 4; 847 NW2d 657 (2014), quoting *Black's Law Dictionary* (9th ed).

The Court in *Daniel*, 254 Mich App at 3-5, concluded that a similar criminal act exclusion precluding "coverage for 'bodily injury or property damage resulting from a criminal act or omission' " was not illusory. It reasoned that "as a matter of public policy, an insurance policy that excludes coverage for a person's criminal acts serves to *deter* crime, while a policy that provides benefits to those who commit crimes would *encourage* it." *Id*. at 5 (emphasis in original). Further, the Court noted that the insured in that case voluntarily excluded herself from coverage when she pled guilty to a criminal charge. *Id*. at 4-5. Therefore, the exclusion did not violate public policy. *Id*. Similarly, the Court in *Auto Club Group Ins Co v Booth*, 289 Mich App 606, 608-615; 797 NW2d 695 (2010), rejected an argument that an identical exclusion violated public policy because it was overbroad by excluding coverage for persons unintentional, negligent conduct. In doing so, it cited *Daniel* and noted that criminal act exclusions are not contrary to public policy when they deter crime by excluding coverage for criminal actions.

We are bound by this published case law. MCR 7.215(C)(2). Appellants cite no authority that would allow us to overrule this binding precedent, as they are required to do. MCR 7.212(C)(7). Therefore, exclusion 10 is unambiguous, exclusion 10 does not violate public policy, and we enforce the exclusion as written.[3]

---

[3] Timothy and Robin abandoned their argument that Auto Club should be estopped from declining coverage because they cited no authority to support their argument. See *Green Oak Twp v Munzel*, 255 Mich App 235, 244; 661 NW2d 243 (2003).

Sullivan brought two claims against Timothy and Robin: a claim for negligence and a claim titled "Social Host." The trial court granted Timothy and Robin's motion for summary disposition and dismissed the negligence claim.[4] Further, Sullivan stated that the trial court granted Timothy and Robin's motion for summary disposition regarding Sullivan's "social host claim as it relates to MCL 436.1701." Sullivan's complaint alleges that Timothy and Robin knowingly allowed teenagers on the lake property, allowed, provided, or furnished the teenagers alcohol, and failed to inquire diligently into whether any of the persons in possession of alcohol were minors. MCL 750.141a states an owner of any premises is guilty of a misdemeanor if he or she "[k]nowingly allow[s] a minor to consume or possess an alcoholic beverage at a social gathering on or within that premises" and defines a minor as "an individual less than 21 years of age."[5] Therefore, the substance of his complaint alleges that he suffered bodily injury as a direct and proximate result of Timothy and Robin's violation of MCL 750.141a. See *United States Fidelity & Guarantee Co*, 201 Mich App at 493-494. Sullivan states that the trial court denied Timothy and Robin's motion for summary disposition regarding Sullivan's "social host claim . . . as it relates to MCL 750.141a."

The trial court concluded in Auto Club's suit that exclusion 10 applied because Sullivan alleged that Timothy and Robin committed a misdemeanor by violating MCL 750.141a. However, the trial court erred.

First, there is a genuine issue of material fact as to whether Timothy and Robin violated MCL 750.141a. MCL 750.141a states an owner of any premises is guilty of a misdemeanor if he or she "[k]nowingly allow[s] a minor to consume or possess an alcoholic beverage at a social gathering on or within that premises" and defines allow as "to give permission for, or approval of, possession or consumption of an alcoholic beverage" "[i]n writing," "[b]y 1 or more oral statements," or "[b]y any form of conduct, including a failure to take corrective action, that would cause a reasonable person to believe that permission or approval has been given."

Auto Club provided no evidence in the declaratory action that Timothy and Robin gave permission for Sullivan to possess or consume alcohol in writing or through an oral statement. Further, there is a genuine issue of material fact as to whether Timothy or Robin's conduct created permission to possess or consume alcohol. Allison Golba, another person on the property, testified that "there were cans of beer" and red Solo cups "around." Sullivan testified that he took beer from coolers when Timothy and Robin were present and later drank beer in their presence. However, Timothy denied seeing Sullivan drink. Robin denied knowing if others drank alcohol on Friday the 9th and testified that she told Sullivan to get rid of alcohol on Saturday the 10th.

Second, even assuming a violation occurred, there is a genuine issue of material fact as to whether Sullivan's bodily injury "result[ed] from" Timothy and Robin's violation of MCL

---

[4] It appears that the trial court granted Timothy and Robin's motion before it ruled on Auto Club's suit.

[5] The statute provides exceptions to this rule, but none apply here.

750.141a. As explained above, Sullivan's injury would result from Timothy and Robin's violation of MCL 750.141a if his injury was "a physical, logical, or legal consequence" of their violation of the statute.

Sullivan sustained injury after he drank alcohol and then dove into shallow water head first. However, it is unclear whether Sullivan knew the water was shallow. Timothy stated that the bottom of the lake was sometimes visible from the dock. Robin described the shoreline as "visibly shallow," but denied posting signs warning of the shallow water. Molloy explained that he was standing in the water when Sullivan dove and that the water came up to his mid-thigh. Sullivan denied looking at the water before diving in or seeing anyone standing in the water. Auto Club failed to provide evidence in the declaratory action to show how or if Sullivan's alcohol consumption affected his perception of the water's depth. Further, Auto Club failed to provide evidence in the declaratory action to show how or if Sullivan's alcohol consumption impacted his decision to dive into the water.[6] Therefore, we conclude that there is a genuine issue of material fact as to whether exclusion 10 precluded coverage.

## IV. EXCLUSION 12: NEGLIGENT SUPERVISION

Next, appellants argue that the trial court erred in concluding that exclusion 12 applied. Because there was at least a genuine issue of material fact as to whether it applied, we agree.

Exclusion 12 is ambiguous. Exclusion 12 states that the policy "will not cover" "bodily injury . . . arising out of negligent supervision by any insured person of any person whose conduct: (1) is not an occurrence under Part II of this policy; or (2) is an intentional or criminal act excluded from coverage under Part II of this policy." Part II defines an occurrence as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." The policy defines an accident as "a fortuitous event or chance happening that is neither reasonably anticipated nor reasonably foreseen from the standpoint of both any insured person and any person suffering injury or damages as a result." As discussed above, criminal act is an unambiguous term. *Fick*, 226 Mich App at 199-203.

Timothy and Robin argue that the exclusion is ambiguous, specifically its use of the term "negligent supervision."[7] The policy does not define this phrase or its individual terms.

---

[6] Rather, there is a genuine issue of material fact as to whether Sullivan's possession or consumption of alcohol resulted in his bodily injury. Therefore, we also reject Auto Club's alternative argument that exclusion 10 applies because Sullivan's bodily injury resulted from his own criminal act of violating MCL 436.1703(1).

[7] Timothy and Robin did not abandon their argument that exclusion 12 is ambiguous because their argument references principles for insurance policy interpretation cited earlier in their brief.

Additionally, Timothy and Robin argue that exclusion 12 violates public policy for the same reasons that they argued that exclusion 10 violated public policy. Because of this reference to

*Black's Law Dictionary* (10th ed) defines negligent as being "[c]haracterized by a person's failure to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstance." It defines supervision as "[t]he series of acts involved in managing, directing, or overseeing persons or projects." *Id*. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines negligent as "1a: marked by or given to neglect esp. habitually or culpably b: failing to exercise the care expected of a reasonably prudent person in like circumstances 2: marked by a carelessly easy manner." It defines supervision as "the action, process, or occupation of supervising; *esp*: a critical watching and directing (as of activities or a course of action)." *Id*. It defines supervising as overseeing. *Id*. Further, the Court in *Farm Bureau Gen Ins Co v Harleysville Lake States Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket No. 272930), pp 5-6, analyzed whether an exclusion applied for "losses related to injury . . . 'arising out of and/or resulting from any actual or alleged negligent . . . supervising of any former or current employee of any insured or any volunteer worker.' " It defined negligent supervision in reference to a negligence action, which requires proof of "duty, breach of duty, causation, and damages." *Id*. This opinion is persuasive, see *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 42-43 n 10; 761 NW2d 151 (2008), in that it imposes a duty requirement in the term negligent supervision. Therefore, negligent supervision means as (1) having the duty to oversee someone and (2) doing so in a careless manner.

However, such an interpretation still renders the term ambiguous. An insured would not have a uniform duty to supervise all persons or all types of conduct. Rather, the duty would change based on the status of the injured person and the conduct at issue. Therefore, the term negligent supervision "can be reasonably understood in different ways" and is, thus, ambiguous. See *Steinmann*, 258 Mich App at 154. The parties point to no extrinsic evidence to interpret this term. See *Klapp*, 468 Mich at 470-471. Therefore, we construe any ambiguity against Auto Club and in favor of Timothy and Robin. See *id*.

In this case, the trial court found that exclusion 12 applied, in part, because Sullivan's allegation that Timothy and Robin had a duty to control his actions pursuant to MCL 750.141a is equivalent to a claim of negligent supervision. However, it requires a tortured and narrow reading of Sullivan's complaint, MCL 750.141a, and exclusion 12 to conclude that Timothy and Robin had a duty to supervise Sullivan's drinking and his subsequent act of diving off the dock. Because any ambiguity should be construed against Auto Club, we do not find such a duty. See *Klapp*, 468 Mich at 470-471.

Further, to the extent that MCL 750.141a imposed a duty upon Timothy and Robin, it only imposed a duty not to allow *known* consumption or possession of alcohol. But there is a genuine issue of material fact as to whether Timothy and Robin knew Sullivan consumed or possessed alcohol. Robin testified that she typically advises against underage drinking, but she did not remember if she did so that weekend. Nicholas and Molloy testified that Robin told the

---

their argument in Issue I, they did not abandon the claim. However, as explained in Issue I, their argument fails. See *Daniel*, 254 Mich App at 4-5; *Booth*, 289 Mich App at 608-615.

group not to drink that weekend. But Larissa Palazzolo, another person on the property, testified that Robin gave no such instruction. Further, as explained above, multiple witnesses gave contradictory testimony about Timothy and Robin's knowledge of Sullivan's drinking. Therefore, the trial court erred in granting summary disposition on the basis of exclusion 12.[8]

## V. CONCLUSION

We conclude that there was at least a genuine issue of material fact as to whether exclusions 10 and 12 precluded coverage. Therefore, we reverse the trial court's order granting Auto Club's motion for summary disposition and remand. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell

---

[8] Auto Club presented an alternate argument should we find that exclusions 10 *and* 12 did not apply: we should affirm the trial court's order granting Auto Club's motion for summary disposition because the trial court reached the correct result for the wrong reason. Specifically, Auto Club argued that the trial court erred in denying Auto Club's motion for summary disposition regarding exclusion 4. See *In re Herbach Estate*, 230 Mich App 276, 283-284; 583 NW2d 541 (1998).

The trial court denied Auto Club's motion because it concluded that "a question of fact exists." We agree with the trial court and affirm the denial of Auto Club's motion for summary disposition regarding exclusion 4.