# ALLSTATE INSURANCE COMPANY *v.* DONTE TENN ET AL. (SC 20586)

Robinson, C. J., and McDonald, D'Auria, Mullins, Kahn, Ecker, and Keller, Js.

*Syllabus*

The plaintiff insurance company brought the present declaratory judgment action in the United States District Court for the District of Connecticut, seeking a determination that it was not obligated to defend and indemnify the defendant T in connection with a civil action brought against T by the defendant M. M's civil action stemmed from an incident in which he sustained injuries after T assaulted him. After the incident, T entered a plea of nolo contendere in a separate criminal prosecution to the charge of first degree assault. The plaintiff filed a motion for summary judgment in the present action, claiming that T's plea of nolo contendere relieved it of its duty to defend and indemnify T in M's civil action under a homeowners insurance policy issued by the plaintiff to T's mother in light of a criminal acts exclusion in that policy. Thereafter, the District Court, pursuant to statute (§ 51-199b (d)) and the rules of practice (§ 82-1), certified to this court the question of whether a plea of nolo contendere could be used by an insurance company in a declaratory judgment action to trigger a criminal acts exclusion to coverage. *Held* that T's plea of nolo contendere was inadmissible in the plaintiff's declaratory judgment action to prove the occurrence of a criminal act and, therefore, could not be used to trigger the criminal acts exclusion of the homeowners insurance policy: under this state's common law, as codified in the Connecticut Code of Evidence (§ 4-8A (a) (2)), a plea of nolo contendere generally cannot be admitted in a subsequent proceeding to prove the occurrence of criminal act, and the court's holding in this case was harmonious with case law from numerous jurisdictions; moreover, the purpose of the plea of nolo contendere is to facilitate the efficient disposition of criminal cases by encouraging plea bargaining, such a plea potentially allows the criminal defendant to avoid the cost of litigating both criminal and civil cases and to consolidate

Allstate Ins. Co. *v.* Tenn

resources in defense of only the latter, and allowing the use of a nolo contendere plea as proof of underlying criminal conduct in subsequent civil litigation would undermine the very essence of such a plea; furthermore, the plaintiff could not prevail on its claim that it should be permitted to use T's nolo contendere plea to trigger the policy's criminal acts exclusion as a matter of public policy insofar as the general rule against using a such plea could be adequately safeguarded by enforcing the rule in M's civil action, and as T should be not be allowed to benefit from his illegal conduct, this court having concluded that there was no principled reason to rigorously enforce the restrictions imposed by § 4-8A (a) (2) against the victim of a crime in a civil case while simultaneously ignoring that rule for an insurance company in a declaratory judgment action arising out of the same set of facts, and, although no one should be allowed to profit from his or her own wrongdoing, the exclusion of T's plea in no way precluded the plaintiff from seeking to enforce the policy's criminal acts exclusion in its declaratory judgment action by presenting evidence concerning T's criminal conduct, other than T's plea, to establish the applicability of that exclusion.

(*Two justices concurring in part and dissenting
in part in one opinion*)

Argued September 8, 2021—officially released February 23, 2022*

*Procedural History*

Action for judgment declaring that the plaintiff had no duty to defend and indemnify the named defendant in an action seeking to recover damages for injuries sustained in an assault, brought to the United States District Court for the District of Connecticut, where the court, *Arterton, J.*, denied the plaintiff's motion for summary judgment; thereafter, the court, *Arterton, J.*, certified a question of law to this court concerning whether a plea of nolo contendere and the resulting conviction can be used to trigger a criminal acts exclusion in an insurance policy.

*Paige D. Beisner*, with whom, on the brief, was *Michele C. Wojcik*, for the appellant (plaintiff).

*Ronald S. Johnson*, for the appellee (named defendant).

* February 23, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Eamon T. Donovan*, for the appellee (defendant Tailan Moscaritolo).

*Opinion*

KAHN, J. The question in this case is whether the plaintiff, Allstate Insurance Company (Allstate), can use a plea of nolo contendere entered by the named defendant, Donte Tenn, to trigger a criminal acts exclusion in a homeowners insurance policy governed by Connecticut law. Allstate commenced the present action against Tenn and another defendant, Tailan Moscaritolo, in the United States District Court for the District of Connecticut, seeking a judgment declaring that it has no contractual duty either to defend or to indemnify Tenn in a civil action brought against Tenn by Moscaritolo in Connecticut Superior Court. Allstate subsequently filed a motion for summary judgment in this declaratory judgment action, arguing that Tenn's plea of nolo contendere relieved it of its duty both to defend and to indemnify him as a matter of law. The parties agreed that a ruling on Allstate's motion with respect to indemnification would be premature, and, as a result, the District Court denied Allstate's motion with respect to that issue without prejudice. The only remaining question, which the District Court, in turn, certified to this court pursuant to General Statutes § 51-199b (d) and Practice Book § 82-1, is whether Tenn's plea of nolo contendere relieved Allstate of its duty to defend by triggering the policy's criminal acts exclusion as a matter of law. For the reasons that follow, we conclude that Tenn's plea of nolo contendere is inadmissible to prove the occurrence of a criminal act and, therefore, cannot be used to trigger the policy's criminal acts exclusion.

The following undisputed facts and procedural history, which relate to three distinct judicial proceedings, are relevant to our consideration of the District Court's

Allstate Ins. Co. *v.* Tenn

certified question. Those three proceedings are (1) the criminal case charging Tenn with an assault on Moscaritolo; *State* v. *Tenn*, Superior Court, judicial district of Middlesex, Docket No. CR-16-0210490-T; (2) the civil action brought by Moscaritolo against Tenn in the Superior Court; *Moscaritolo* v. *Tenn*, Superior Court, judicial district of Middlesex, Docket No. CV-18-6023052-S; and (3) the present declaratory judgment action filed by Allstate against Tenn and Moscaritolo in federal court.[1] See *Allstate Ins. Co.* v. *Tenn*, United States District Court, Docket No. 3:19-cv-00432 (JBA) (D. Conn. March 18, 2021). For the sake of clarity, we briefly review each of these three proceedings in turn.

The facts related to the criminal case against Tenn are straightforward. On October 10, 2016, Moscaritolo was hit repeatedly with a metal baseball bat while walking on a public street in the city of Middletown. Tenn was identified by several witnesses as the perpetrator of that assault and, a few weeks later, was arrested by the police. On November 6, 2018, Tenn entered a plea of nolo contendere to the charge of assault in the first degree in connection with that incident. At the plea hearing, the prosecutor summarized the evidence related to the assault and detailed the agreement the state had reached with Tenn in exchange for his plea. During the court's subsequent canvass, Tenn confirmed that he had heard the charge against him and the evidence recited by the prosecutor, and stated that he elected not to contest that charge.[2] Prior to the court's

---

[1] Records of these proceedings before the Superior Court are a proper subject of judicial notice. See, e.g., *Shirley P.* v. *Norman P.*, 329 Conn. 648, 660, 189 A.3d 89 (2018); *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527–28, 294 A.2d 633 (1972).

[2] The relevant portions of the canvass conducted by the court, *Keegan, J.*, include the following:

"The Court: Now, is this going to be a straight guilty plea, nolo?

"[Defense Counsel]: It's nolo. I filed here, Your Honor."

After confirming the terms of the agreement with Tenn, the court asked the clerk to put Tenn to plea:

"The Clerk: Donte Tenn, in Docket Number CR-16-0210490, to the charge of assault in the first degree, on or about October 10, 2016, in violation of Connecticut General Statutes § 53a-59, how do you plead?

Allstate Ins. Co. *v.* Tenn

canvass, the defendant completed, signed and submitted the required Plea of Nolo Contendere Form (JD-CR-60), which provides:

"I am the defendant in the case named above and:

"I have personally been in the court and have been advised of my rights;

"I have had the complaint in this case read to me or gave up my right to have the complaint read to me;

"I do not want to contest the claims of the [s]tate of Connecticut that are in the complaint; and

"I will not contend with the [s]tate of Connecticut about the complaint.

"By signing this paper, I plead nolo contendere (no contest) and put myself on the clemency of the court."

During the canvass, the prosecutor informed the court that there was a pending civil case filed by the victim, Moscaritolo, against Tenn and his mother's insurance company. He further advised the court that Tenn was cooperating in that civil lawsuit, and, for that reason, the victim was "not necessarily seeking much jail time" and that he may be monetarily indemnified for the injuries he suffered. Ultimately, Tenn received a sentence of twelve years of imprisonment, execution suspended after two years, and three years of probation in connection with this conviction.

---

"[Tenn]: No contest."

After confirming with the clerk that the nolo contendere plea form typically completed was in proper form, the court asked the prosecutor to summarize the factual basis of the plea. The court went on to conduct a full canvass of Tenn to ensure that his decision not to contest the charges was, indeed, voluntary. Following the canvass, the court concluded: "[The] court will accept the plea [and] find it knowingly and voluntarily made with the assistance of competent counsel. There is a factual basis, so the plea of nolo contendere is accepted, and a finding of guilty may enter."

Allstate Ins. Co. *v.* Tenn

Moscaritolo's separate civil action against Tenn sought to recover damages for personal injuries resulting from the same assault.[3] That action, which is presently awaiting trial before the Superior Court, contains four counts: (1) assault, (2) negligent assault, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. The first and third counts allege that Moscaritolo's injuries resulted from Tenn's "wilful, wanton, intentional and malicious acts . . . ." The second and fourth counts, by contrast, allege that Tenn acted negligently by swinging the baseball bat near Moscaritolo wildly and without warning.[4] Allstate is currently providing a legal defense to Tenn in that civil action subject to a reservation of rights.

Allstate then commenced a third action in District Court, seeking a judgment declaring that it was not contractually obligated to defend or to indemnify Tenn in Moscaritolo's civil action. Allstate conceded that Tenn qualified as an "insured person" within the mean-

---

[3] Moscaritolo alleged that the assault caused traumatic brain injuries, skull fractures, an intracranial hemorrhage, an epidural hematoma, a left distal tibial shaft fracture, a concussion, posttraumatic stress disorder, and headaches.

[4] We note that, in some jurisdictions, creative pleading alone may not always suffice to avoid an award of summary judgment in favor of an insurer. See, e.g., *United National Ins. Co.* v. *Tunnel, Inc.*, 988 F.2d 351, 354–55 (2d Cir. 1993) (The court concluded that, under New York law, an insurance policy exclusion barred coverage for injuries resulting from an assault by a nightclub bouncer, notwithstanding the fact that the underlying pleading sounded in negligence, stating: "On a motion for summary judgment the court must pierce through the pleadings and their adroit craftsmanship to get at the substance of the claim. . . . [I]t is plain that [the victim] is alleging that the bouncer intentionally struck him. And that makes it a claim for battery—not covered by the insurance policy."); see also E. Pryor, "The Stories We Tell: Intentional Harm and the Quest for Insurance Funding," 75 Tex. L. Rev. 1721, 1728, 1735 n.45 (1997) (noting that "[m]erely adding an allegation of negligence will not necessarily create a duty to defend" and that, in some cases, "the intentional nature of the harm may be so overwhelming that it resists reshaping, or the physical evidence may be flatly inconsistent with the plaintiff's effort to characterize the injury as negligently inflicted").

Allstate Ins. Co. *v.* Tenn

ing of a homeowners insurance policy purchased by Tenn's mother, Stephanie L. Patrick, that was in force at the time of the assault. (Internal quotation marks omitted.) It also conceded that the terms of that policy generally obligated it to pay "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence . . . ." (Emphasis omitted; internal quotation marks omitted.) Allstate nonetheless alleged, inter alia,[5] that it had no duty to defend or to indemnify Tenn because any coverage for his actions was precluded under the policy's criminal acts exclusion. That exclusion provides in relevant part: "[Allstate does] not cover bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts of the insured person. This exclusion applies even if:

"(a) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or

"(b) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

"This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime. . . ." (Emphasis omitted.)

In its motion for summary judgment, Allstate claimed that there were no genuine issues of material fact relating to the application of the criminal acts exclusion and that, as a result, it was entitled to a declaratory ruling

---

[5] Allstate also alleged that the assault was intentional and, therefore, did not qualify as an "occurrence" and that Tenn had failed to provide it with adequate notice. (Internal quotation marks omitted.) Because the question certified by the District Court relates solely to the impact of Tenn's plea of nolo contendere on the policy's criminal acts exclusion, no further discussion of these additional claims is necessary.

Allstate Ins. Co. *v.* Tenn

barring coverage as a matter of law. In advancing this argument, Allstate specifically argued that "Tenn's plea of nolo contendere precludes any argument that he did not commit [a] crime." The District Court reserved decision on this point of law and subsequently certified the following question to this court: "Whether a plea of nolo contendere and the resulting conviction can be used to trigger a criminal acts exclusion in an insurance policy." This court accepted that certified question, and this proceeding followed.

The applicable standard of review is well established. "[C]onstruction of a contract of insurance presents a question of law . . . [that] this court reviews de novo. . . . The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . In evaluating the expectations of the parties, we are mindful of the principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . [W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses. . . . When construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim. . . . While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hart-*

*ford Accident & Indemnity Co.*, 333 Conn. 343, 364–65, 216 A.3d 629 (2019); see also *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013).

In this state, the general rule is that a plea of nolo contendere in a criminal case is inadmissible in a subsequent proceeding to prove the occurrence of a criminal act. See *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 51, 757 A.2d 501 (2000) ("under our law a prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct"); see also *Lawrence* v. *Kozlowski*, 171 Conn. 705, 711–12 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 713, 8 A.2d 5 (1939). Indeed, the operation of this principle is what makes a plea of nolo contendere unique. See *State* v. *Martin*, 197 Conn. 17, 21 n.7, 495 A.2d 1028 (1985) ("[t]he only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case"), overruled in part on other grounds by *State* v. *Das*, 291 Conn. 356, 968 A.2d 367 (2009); *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 107 Conn. App. 321, 328 n.7, 945 A.2d 494 (2008) ("A plea of nolo contendere is a declaration by the accused that he will not contest the charge. Its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered."), rev'd on other grounds, 298 Conn. 824, 6 A.3d 1142 (2010); *State* v. *Bridgett*, 3 Conn. Cir. 206, 208–209, 210 A.2d 182 (1965) ("[t]he only basic characteristic of the plea of nolo contendere [that] differentiates it from a guilty plea is that the defendant is not estopped from denying the facts to which he pleaded nolo contendere

in a subsequent judicial civil proceeding''); E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.13.5 (c) (2), p. 532 (''A plea of nolo contendere is not a confession of guilt, but just a plea that the accused will not contest the issue of guilt and will be sentenced as a guilty person. . . . [It] is not an admission of guilt and cannot be used as an admission in a later proceeding.'' (Internal quotation marks omitted.)); see also *State* v. *Faraday*, 268 Conn. 174, 204–205 and n.17, 842 A.2d 567 (2004) (concluding that defendant violated terms of probation imposed following *Alford*[6] plea by failing to admit to crime during course of treatment and noting, in dictum, that plea of nolo contendere, like *Alford* plea, has ''the same legal effect as a plea of guilty *on all further proceedings within the indictment*'' but ''may not be used against the defendant as an admission in a subsequent criminal or civil case'' (emphasis added; internal quotation marks omitted)); 2 B. Holden & J. Daly, Connecticut Evidence (1988) § 103f, p. 1030 (''[a] plea of nolo contendere is not admissible as an admission by a party'').[7]

This common-law rule was ultimately codified in § 4-8A (a) of the Connecticut Code of Evidence, which provides in relevant part: ''Evidence of the following shall not be admissible in a civil or criminal case against a person who has entered a plea of guilty or nolo conten-

---

[6] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] The use of a plea of nolo contendere, thus, in no way limits a trial court's ability to impose forms of financial punishment, such as restitution, in the context of the criminal action in which the plea is entered. See, e.g., *State* v. *Woodtke*, 130 Conn. App. 734, 737–38, 25 A.3d 699 (2011); *State* v. *Daley*, 81 Conn. App. 641, 643 n.2, 841 A.2d 243, cert. denied, 269 Conn. 910, 852 A.2d 740 (2004); *State* v. *Klinger*, 50 Conn. App. 216, 217–18, 718 A.2d 446 (1998); cf. Fed. R. Crim. P. 11 (b) (1) (''[b]efore the court accepts a plea of . . . nolo contendere . . . the court must inform the defendant of . . . (K) the court's authority to order restitution''); see also, e.g., *Baugh* v. *State*, 635 S.W.3d 9, 11 (Ark. App. 2021); *People* v. *Roddy*, 498 P.3d 136, 139 (Colo. 2021).

Allstate Ins. Co. *v.* Tenn

dere in a criminal case or participated in plea negotiations in such case, whether or not a plea has been entered . . . (2) a plea of nolo contendere . . . or any statement made in conjunction with such a plea . . . .'' This language is similar to both the Federal Rules of Evidence and codes of evidence in a number of other states. See, e.g., Fed. R. Evid. 410 (a) (2); Me. R. Evid. 410; N.H. R. Evid. 410; R.I. R. Evid. 410; see also Supreme Judicial Court Advisory Committee on Massachusetts Evidence Law, Massachusetts Guide to Evidence (2021) § 410, p. 47.

Consistent with our common law and rules of evidence, our rules of practice vest Superior Court judges with discretion to accept pleas of nolo contendere in criminal cases. See Practice Book §§ 37-7 and 39-18. Specifically, Practice Book § 39-18 provides in relevant part that ''[a] plea of nolo contendere shall be in writing, shall be signed by the defendant, and, when accepted by the judicial authority, shall be followed by a finding of guilty.'' A plea of nolo contendere allows a defendant to accept a punishment, often lighter, as if he or she were guilty, and yet still maintain his or her innocence. See J. Kuss, Comment, ''Endangered Species: A Plea for the Preservation of *Nolo Contendere* in Alaska,'' 41 Gonz. L. Rev. 539, 561–62 (2006) (''The plea was not an express admission of guilt, but rather was viewed as 'a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency.' It was 'a mere statement of unwillingness to contest and no more.' In fact, the only time that a plea of nolo contendere had the same effect as a guilty plea was in the criminal case it which it was entered.'' (Footnotes omitted.)).

The single, narrow question now before this court is whether, under Connecticut law, a plea of nolo contendere can be used by an insurance company in a declaratory judgment action to prove criminal conduct that would trigger a contractual exclusion to coverage. The

simple answer to that question under our common law, as codified in § 4-8A (a) of the Connecticut Code of Evidence, is that a plea of nolo contendere cannot be used as proof of criminal conduct.

Although neither the parties nor the question certified to us by the District Court doubts the wisdom of this rule, we pause to observe the pragmatic and practical considerations underlying the plea itself. Its purpose, at base, is to facilitate the efficient disposition of criminal cases by encouraging plea bargaining. See *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's, Inc.*, 125 Ohio St. 3d 362, 365, 928 N.E.2d 685 (2010); see also P. Healey, Note, "The Nature and Consequences of the Plea of Nolo Contendere," 33 Neb. L. Rev. 428, 433–34 (1954); 21 Am. Jur. 2d 797–98, Criminal Law § 655 (2016). It provides criminal defendants with a means to resolve the criminal case against them while avoiding the potentially harsher penalties occasioned when a defendant proceeds to trial. See J. Kuss, supra, 41 Gonz. L. Rev. 560 ("a criminal defendant may just find it preferable to accept a light punishment offered by the prosecution in exchange for a nolo contendere plea, rather than face far worse consequences both in terms of criminal punishment and civil liability" (internal quotation marks omitted)). The financial consequences include the costs of litigating both criminal and civil cases, which may lead a defendant who claims innocence to accept a favorable plea in order to consolidate resources in defense of only the latter. Id. ("It is not uncommon for a criminal defendant, even if innocent, to plead nolo contendere—particularly if the overwhelming strength of the state's case makes it futile to go to trial or if the defendant has no basis for pleading guilty because she simply cannot remember committing any crime. Still other defendants may use a nolo plea as a psychological crutch. Whatever the case, there are a litany of reasons why a criminal defendant may accept

a nolo plea and it should not be casually assumed that a defendant has sufficient incentive to litigate merely because she is charged with a serious offense. Even innocent defendants may have a broad range of motivations for entering a plea of nolo contendere rather than contesting a charge.'' (Footnotes omitted; internal quotation marks omitted.)); see also F. Easterbrook, ''Criminal Procedure as a Market System,'' 12 J. Legal Stud. 289, 320 (1983).

In addition to affording defendants the opportunity to enter into a favorable plea agreement without fearing the financial consequences that would result from an admission of guilt, ''the nolo plea facilitates the expeditious administration of criminal justice.'' J. Kuss, supra, 41 Gonz. L. Rev. 564; see also id. (''[t]he inherent utility of the plea lies in the fact that it encourages plea bargaining and dispenses with lengthy and expensive trials'' (internal quotation marks omitted)). Allowing the use of nolo contendere pleas as proof of underlying criminal conduct in subsequent civil litigation would, thus, undermine the very essence of the nolo contendere plea itself. See id., 562.

The parties accurately observe that, notwithstanding this evidentiary limitation and the principles of public policy underlying it, the use of a nolo contendere plea does not always shelter criminal defendants from the collateral consequences triggered by the resulting criminal conviction. Courts have, for example, found that a conviction of operating a vehicle under the influence following a plea of nolo contendere can cause an administrative suspension of a Connecticut driver's license. See, e.g., *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 333–35, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999). Similarly, a conviction of a drug related felony following a plea of nolo contendere can lead to the suspension of a physician's certificate of registration to distribute a con-

Allstate Ins. Co. *v.* Tenn

trolled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. See, e.g., *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574–75 (2d Cir. 1974). Still other examples can be listed. See, e.g., annot., "Plea of Nolo Contendere or Non Vult Contendere," 152 A.L.R. 253, 290 (1944) ("Is an individual who has entered a plea of nolo contendere in one proceeding a multi-offender after a subsequent conviction in another proceeding? The answer obviously is yes . . . .").[8] Recognizing the unique nature of pleas of nolo contendere, our legislature has expressly permitted, when deemed appropriate, the existence of a conviction resulting from that plea to have collateral consequences; see, e.g., General Statutes § 36a-489 (a) (conviction following plea of nolo contendere may preclude issuance of mortgage broker license); and has compelled certain procedures governing its use. See, e.g., General Statutes § 54-1j (requiring advisement relating to immigration and naturalization consequences resulting from plea of nolo contendere). The plea of nolo contendere, thus, does not act as an absolute privilege prohibiting all collateral consequences arising from the resulting criminal conviction. See *Sokoloff* v. *Saxbe*, supra, 574 ("[when] . . . a statute (or judicial rule) attaches legal consequences to the fact of a conviction, the majority of courts have held that there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial").[9]

[8] Although a plea of nolo contendere can also be used by the state to establish a violation of probation; see *State* v. *Daniels*, 248 Conn. 64, 73, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005); such a practice is not properly characterized as a policy based exception to the rule set forth in § 4-8A (a) of the Connecticut Code of Evidence. The admissibility of the plea in that particular context results, instead, from the inapplicability of the Code of Evidence to probation matters. Conn. Code Evid. § 1-1 (d) ("[t]he [c]ode, other than with respect to privileges, does not apply in proceedings such as . . . (4) [p]roceedings involving probation").

[9] Our use of this same quotation from *Sokoloff* in *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 51 n.13, should not be read to indicate

Allstate Ins. Co. *v.* Tenn

The present case does not, however, require us to engage in a lengthy or detailed discussion of the permissible collateral impacts of convictions resulting from pleas of nolo contendere under Connecticut law because, quite simply, the contractual exclusion at issue does not turn on the existence of a criminal conviction. To the contrary, the policy expressly states that this exclusion "applies *regardless of whether or not* such insured person is actually charged with, or convicted of a crime."[10] (Emphasis altered.) This plain and unambiguous language makes either the *existence or absence* of a criminal conviction contractually irrelevant.[11] The provision, instead, is triggered by the commission of the "intentional or criminal acts of [an] insured person." (Emphasis omitted.) Tenn's plea of nolo contendere is inadmissible as proof of criminal acts under § 4-8A (a) of the Connecticut Code of Evidence and our case law.[12]

any specific disagreement with the legal reasoning of the United States Court of Appeals for the Second Circuit. Our remark merely recognized, as we do again today, that the collateral impacts of the plea are not always the subject of unanimous agreement among courts.

[10] Criminal acts exclusions in other insurance policies have occasionally been drafted to turn explicitly on the existence of a criminal conviction, regardless of how that conviction was obtained. See *Sosinski* v. *Unum Life Ins. Co. of America*, 15 F. Supp. 3d 723, 727, 732 (E.D. Mich. 2014) (concluding that exclusion in long-term disability insurance plan precluding coverage for " 'disabilities caused by, contributed to by, or resulting from' the 'commission of a crime for which you have been convicted' " was triggered by conviction resulting from insured's plea of nolo contendere); *Key* v. *Dept. of Administrative Services*, 340 Ga. App. 534, 536, 798 S.E.2d 37 (2017) (referring to contractual provision excluding coverage for " 'any dishonest, fraudulent or criminal act or omission of any [c]overed [p]arty which forms the basis of a criminal conviction, whether by verdict, plea of guilty or plea of nolo contendere' ").

[11] Even if the language of the policy merely rendered the point ambiguous, our rules of construction would still compel us to adopt the reading favoring coverage. See *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, supra, 333 Conn. 365 ("the language [of exclusion clauses] should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim" (internal quotation marks omitted)).

[12] Although this court's precedent has addressed the inadmissibility of nolo contendere pleas to prove the occurrence of a criminal act in civil

Allstate Ins. Co. *v.* Tenn

See *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–13 (proof of nolo contendere plea and resulting conviction were inadmissible to support factual finding of criminal conduct).

This result is harmonious with case law from numerous other jurisdictions. See, e.g., *Safeco Ins. Co. of Illinois* v. *Gasiorowski*, Docket No. 20-3877, 2021 WL 2853255, *3 (E.D. Pa. July 7, 2021) (insured's plea of nolo contendere did not trigger criminal acts exclusion in homeowners insurance policy); *Lichon* v. *American Universal Ins. Co.*, 435 Mich. 408, 414–15, 459 N.W.2d 288 (1990) (plea of nolo contendere and resulting conviction were inadmissible in subsequent civil litigation to trigger insurance contract's antifraud exclusionary clause); *Safeco Ins. Co. of America* v. *Liss*, 303 Mont. 519, 530–32, 16 P.3d 399 (2000) (previous nolo contendere plea to crime of assault did not preclude insured from contesting insurer's assertion that incident fell within policy's criminal acts exclusion); *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's, Inc.*, supra, 125 Ohio St. 3d 367 (evidence of insured's no contest pleas and subsequent convictions for arson and insurance fraud was inadmissible in civil action to trigger criminal acts exclusion); *Korsak* v. *Prudential Property & Casualty Ins. Co.*, 441 A.2d 832, 834 (R.I. 1982) (rejecting argument that insured's plea of nolo conten-

actions for damages; see, e.g., *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, supra, 125 Conn. 713–14; and certain administrative appeals; see, e.g., *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–13; we have not yet addressed the application of that rule to a criminal acts exclusion in an insurance policy. Superior Court decisions confronted with this particular question have taken divergent approaches. Compare *Allstate Ins. Co.* v. *Simansky*, 45 Conn. Supp. 623, 630, 738 A.2d 231 (1998) (concluding that nolo contendere plea triggered criminal acts exclusion), with *Allstate Ins. Co.* v. *Linarte*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005150-S (May 24, 2007) (43 Conn. L. Rptr. 664, 669) (declining to consider defendant's plea of nolo contendere in determining whether criminal acts exclusions applied). To the extent that the reasoning of *Simansky* is inconsistent with the reasoning of this decision, it is hereby overruled.

Allstate Ins. Co. *v.* Tenn

dere entitled insurer to summary judgment); see also *Hopps* v. *Utica Mutual Ins. Co.*, 127 N.H. 508, 511, 506 A.2d 294 (1985) (Souter, J.) (''a plea of nolo contendere in an earlier criminal prosecution will raise no estoppel, since that plea neither controverts nor confesses the facts [on] which the conviction must rest'').

Cases cited by Allstate reaching the opposite result are distinguishable. Various decisions from the state of California; see, e.g., *20th Century Ins. Co.* v. *Schurtz*, 92 Cal. App. 4th 1188, 112 Cal. Rptr. 2d 547 (2001); *Century-National Ins. Co.* v. *Glenn*, 86 Cal. App. 4th 1392, 104 Cal. Rptr. 2d 73 (2001); are inapposite because those cases involved the commission of felonies and the legislature of that state has, by statute, provided that a plea of nolo contendere to a felony ''shall be the same as that of a plea of guilty for all purposes.'' Cal. Penal Code § 1016 (Deering 2008). An unpublished decision from Kentucky; *Eberle* v. *Nationwide Mutual Ins. Co.*, Docket No. 2013-CA-000898-MR, 2016 WL 2609311 (Ky. App. May 6, 2016), review denied, Kentucky Supreme Court, Docket No. 2016-SC-000299-D (September 15, 2016); is also unpersuasive because that case involved a plea entered pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Although the applicable rule of evidence in that state; see Ky. R. Evid. 410; was amended in 2007 to allow for the admission of *Alford* pleas in subsequent cases, that rule continues to preclude the admission of nolo contendere pleas. *Eberle* v. *Nationwide Mutual Ins. Co.*, supra, *7.[13]

_____

[13] We likewise reject Allstate's reliance on *Auto Club Group Ins. Co.* v. *Booth*, 289 Mich. App. 606, 797 N.W.2d 695 (2010). Approximately one year after the Michigan Supreme Court's decision in *Lichon*, rule 410 of the Michigan Code of Evidence was formally amended to allow use of nolo contendere pleas ''to support a defense against a claim asserted by the person who entered the plea . . . .'' Mich. R. Evid. 410 (2); see *Akyan* v. *Auto Club Ins. Assn.*, 207 Mich. App. 92, 98, 523 N.W.2d 838 (1994), appeal denied, 450 Mich. 939, 548 N.W.2d 626 (1995). Although that state's intermediate appellate court initially wrestled with the question of whether this language was broad enough to encompass a ''claim'' made by an insured;

Allstate Ins. Co. *v.* Tenn

Allstate contends that it should be permitted to use Tenn's plea of nolo contendere to trigger the policy's criminal acts exclusion as a matter of public policy.[14] Specifically, Allstate argues that (1) the general rule against using pleas of nolo contendere can be adequately safeguarded by simply enforcing that rule in Moscaritolo's civil action before the Superior Court, and (2) excluding proof of Tenn's nolo contendere plea will allow him to benefit from his own illegal conduct.

We disagree on both points. First, we see no principled reason to rigorously enforce the restrictions imposed by § 4-8A (a) of the Connecticut Code of Evidence on the victim of a crime in a tort case while simultaneously ignoring that rule for a corporation in a declaratory judgment action arising out of the very same set of facts. The continued, uniform application of that rule ensures that the prospect of civil liability does not control the course of related criminal proceedings. Second, although we wholeheartedly endorse the well established legal maxim that no one should be allowed to profit from his or her own wrongdoing, the exclusion of Tenn's plea of nolo contendere in no way precludes Allstate from vindicating that principle by seeking to enforce the criminal acts exclusion on the basis of the evidence that led to Tenn's prosecution and conviction. Indeed, Allstate is no less able to enforce the exception

(internal quotation marks omitted) *Home-Owners Ins. Co.* v. *Bonnville*, 2006 WL 1566681, \*6 (Mich. App.) (Bandstra, J., concurring in part and dissenting in part), appeal denied, 477 Mich. 953, 723 N.W.2d 900 (2006); that court now appears to have implicitly answered the question in the affirmative. See *Auto Club Ins. Assn.* v. *Andrzejewski*, 292 Mich. App. 565, 571, 808 N.W.2d 537 (2011); *Auto Club Group Ins. Co.* v. *Booth*, supra, 615. Because § 4-8A of the Connecticut Code of Evidence more closely resembles the text of the rule examined by the court in *Lichon*, we continue to view the reasoning of that decision to be most persuasive.

[14] Allstate asserts, and we agree, that this court possesses an inherent authority to amend the rules of evidence on a case-by-case basis. See *State* v. *DeJesus*, 288 Conn. 418, 439, 953 A.2d 45 (2008); see also *State* v. *Gore*, 342 Conn. 129, 133, A.3d (2022).

Allstate Ins. Co. *v.* Tenn

in this case than it would be in a case in which the state declined to pursue a criminal prosecution of the insured party in the first instance.

Of course, neither the District Court's denial of summary judgment on the duty to defend nor the decision that this court reaches today will mark an end to Allstate's ability to seek further relief from liability. Allstate may well still be able to marshal other evidence to establish the applicability of the criminal acts exclusion in a subsequent motion for summary judgment or otherwise establish the same point at trial. For the reasons stated previously in this opinion, however, Tenn's plea of nolo contendere cannot be used by Allstate to satisfy that burden.

The answer to the certified question is: No.

No costs shall be taxed in this court to either party.

In this opinion ROBINSON, C. J., and MULLINS, ECKER and KELLER, Js., concurred.

D'AURIA, J., with whom McDONALD, J., joins, concurring in part and dissenting in part. As the majority recounts, the question that the United States District Court for the District of Connecticut has asked this court to answer is "whether the plaintiff, Allstate Insurance Company (Allstate), can use a plea of nolo contendere entered by the named defendant, Donte Tenn, to trigger a criminal acts exclusion in a homeowners insurance policy governed by Connecticut law." The majority holds that the defendant's "plea of nolo contendere is *inadmissible* to prove the occurrence of a criminal act and, therefore, cannot be used to trigger the policy's criminal acts exclusion." (Emphasis added.) To the extent the District Court's use of the term "trigger" in the certified question suggests that the issue presented is whether the defendant's plea of nolo contendere is

dispositive of whether the policy's criminal acts exclu-
sion applies, I agree with the majority that it is not. I
disagree, however, with the majority that this conclu-
sion is compelled by the fact that the defendant's plea
of nolo contendere is inadmissible under § 4-8A (a) of
the Connecticut Code of Evidence.[1] Because I believe
that the policy underpinning the question of a nolo
plea's admissibility—encouraging plea bargaining—is
attenuated under the circumstances presented, and that
the policy of not defending or indemnifying an insured's
criminal conduct is squarely implicated, I would answer
that, under the current state of our law, the defendant's
nolo plea is admissible, although not necessarily dispos-
itive, evidence. Thus, I respectfully dissent in part.

In a lawsuit between an insurance company and an
insured regarding whether a criminal acts exclusion
applies,[2] and, therefore, whether the insurer owes the
insured a duty (either to defend or indemnify), when
an injured party has sued the insured, the insured's
criminal conviction for the acts leading to the injury is
obviously relevant evidence. This includes a conviction

[1] Pursuant to General Statutes § 51-199b (k) and the District Court's order,
this court "may reformulate a question certified to it." Because I believe
that, before determining whether a nolo plea is dispositive of whether the
policy's criminal acts exclusion applies, we must first address the preliminary
question of whether a plea of nolo contendere is admissible as *evidence* of
the occurrence of a criminal act in an insurance coverage dispute, we should
divide the certified question into two reformulated questions: (1) is the
defendant's plea of nolo contendere admissible, and (2) if so, is it dispositive
of whether the policy's criminal acts exclusion applies.

[2] The exclusion in this case provides in relevant part: "[Allstate does] not
cover bodily injury or property damage intended by, or which may reasonably
be expected to result from the intentional or criminal acts of the insured
person. This exclusion applies even if:

"(a) such bodily injury or property damage is of a different kind or degree
than that intended or reasonably expected; or

"(b) such bodily injury or property damage is sustained by a different
person than intended or reasonably expected.

"This exclusion applies regardless of whether or not such insured person
is actually charged with, or convicted of a crime. . . ." (Emphasis omitted.)

Allstate Ins. Co. *v.* Tenn

based on a plea of nolo contendere, which, after a trial court's finding of a factual basis for and acceptance of the plea, is no less a criminal conviction than the conviction that follows from either a straight guilty plea or a verdict of guilty after trial. See, e.g., *State* v. *Faraday*, 268 Conn. 174, 205 n.17, 842 A.2d 567 (2004) (plea of nolo contendere "has the same legal effect as a plea of guilty" (internal quotation marks omitted)).[3]

As a general matter, a court should admit relevant evidence. See Conn. Code Evid. § 4-2. To keep relevant evidence from the fact finder is to inhibit the court's truth seeking function. See *State* v. *Montgomery*, 254 Conn. 694, 724, 759 A.2d 995 (2000) (courts must apply privileges with circumspection, as withholding relevant evidence impedes truth seeking function of adjudicative process). Of course, not all relevant evidence is admissible. See Conn. Code Evid. § 4-2. Our Code of Evidence recites a number of rules that this court has recognized as bearing on whether a trial court should not admit otherwise relevant evidence to advance another judicial or public policy. See, e.g., *Hicks* v. *State*, 287 Conn. 421, 440, 948 A.2d 982 (2008) ("[T]he rule barring evidence of subsequent repairs in negligence actions is based on narrow public policy grounds, not on an evidentiary infirmity. . . . This policy fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence . . . ."

[3] Under our state law, a nolo plea and an *Alford* plea are " 'functional equivalent[s] . . . .' " *State* v. *Faraday*, supra, 268 Conn. 205 n.17. "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial." *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 385 n.1, 636 A.2d 799 (1994).

Although a plea of nolo contendere and an *Alford* plea are functionally equivalent, I recognize that the precise language of the pleas may differ, and, thus, to the extent the plea is admissible and offered as an opposing party's statement, the content of the statement may differ. See footnote 6 of this opinion.

Allstate Ins. Co. *v.* Tenn

(Internal quotation marks omitted.)); *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 198, 602 A.2d 1011 (1992) ("[t]he general rule that evidence of settlement negotiations is not admissible at trial is based [on] the public policy of promoting the settlement of disputes" (internal quotation marks omitted)).

The inadmissibility of a plea of nolo contendere under certain circumstances is one example. See Conn. Code Evid. § 4-8A (a) (plea of nolo contendere "shall not be admissible in a civil or criminal case against a person who has entered a plea of . . . nolo contendere in a criminal case"). The majority accurately describes the limited "pragmatic and practical considerations" underlying the criminal justice system's permitting of a nolo plea at all. The majority states: "A plea of nolo contendere allows a defendant to accept a punishment, often lighter, as if he or she were guilty, and yet still maintain his or her innocence." The nolo plea may afford the accused the psychological advantage of not having to admit guilt—to himself or to others—or the very real fiscal advantage of resolving a criminal charge while still denying civil liability. A victim must still prove his civil case in court against a defendant who has pleaded nolo contendere and, as the majority puts it, has preserved or "consolidate[d]" his resources in defense of his property. Certain goals of the criminal justice system—including restitution to victims or the admission of guilt as a step toward rehabilitation—are thereby compromised to some extent in each case in which a nolo plea is accepted. See *State* v. *Fowlkes*, 283 Conn. 735, 744, 930 A.2d 644 (2007) (restitution serves state's rehabilitative interest in having defendant take responsibility for his conduct by making victim whole);[4] see

---

[4] The majority notes that a trial court, in accepting a nolo plea, is not prevented from ordering restitution to the victim. The accuracy of this point is obvious, but its materiality to the majority's logic is not. General Statutes § 53a-28 (c) limits the scope of financial restitution to victims of criminal conduct. The court may decline to award financial restitution if the defendant is unable to pay. Additionally, the court may order financial restitution

Allstate Ins. Co. *v.* Tenn

also *State* v. *McCleese*, 333 Conn. 378, 408, 215 A.3d 1154 (2019) (acknowledging that legitimate penal goals include deterrence, retribution, incapacitation, and rehabilitation). These goals are sacrificed for the salutary purpose of the "efficient disposition of criminal cases by encouraging plea bargaining." The majority tells us that "[a]llowing the use of nolo contendere pleas as proof of underlying criminal conduct in subsequent civil litigation *would, thus, undermine the very essence of the nolo contendere plea itself.*" (Emphasis added.), citing J. Kuss, Comment, "Endangered Species: A Plea for the Preservation of *Nolo Contendere* in Alaska," 41 Gonz. L. Rev. 539, 562 (2006).[5] Thus has developed the evidentiary rule that now has been codified at § 4-8A (a) of the Connecticut Code of Evidence.

I have no quarrel with the policy of permitting defendants who plead nolo contendere to prevent the admission of that plea from being used to establish civil liability against them in subsequent litigation brought by their alleged victims. This case, certified to us from the United States District Court, requires us to deter-

only for "easily ascertainable damages for injury or loss of property, actual expenses incurred for treatment for injury to persons and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering or other intangible losses . . . ." General Statutes § 53a-28 (c). As a result, even if the court orders financial restitution, the victim may still bring a civil suit for these excluded damages.

[5] As I note subsequently in this opinion, I believe that the majority's admonition, quoted in the text, is an overstatement. Even the authority it relies on is overstated. See footnote 10 of this opinion. In particular, the footnotes associated with the particular pages of the law review article the majority cites make clear that the main purpose of the rule prohibiting the admission of a plea of nolo contendere in later proceedings is to permit the defendant to avoid making an admission of guilt and to retain the ability to present evidence of his innocence in subsequent litigation. See J. Kuss, supra, 41 Gonz. L. Rev. 561–62 and nn.181–82. As I discuss in this opinion, admission of a defendant's plea of nolo contendere under the present circumstances would not undermine this purpose because the plea would not be dispositive evidence of liability, and the defendant would retain the ability to offer competing evidence of his or her innocence.

mine how far this policy extends, namely, to what lengths must the judiciary, through its rules of evidence, go to encourage plea bargaining and thereby deprive one or more forums of relevant evidence to resolve a subsequent controversy? Is it always true that admitting a nolo plea in any subsequent civil litigation as proof of criminal conduct will "undermine the very essence" of the nolo plea? I am skeptical.

In my view, by holding that the defendant's plea of nolo contendere[6] is not admissible in the present controversy, today's decision unnecessarily extends the rule of inadmissibility beyond the scope of its intended purpose—to encourage plea bargaining—to ensure victim compensation, which, although laudable, is not the purpose of this rule.[7] Despite its protestation to the con-

[6] I note that, to plead nolo contendere, a defendant must submit a standard form, available on the Judicial Branch website, which provides in relevant part: "I do not want to contest the claims of the [s]tate of Connecticut that are in the complaint; and, I will not contend with the [s]tate of Connecticut about the complaint." Additionally, at the defendant's underlying plea proceedings, when asked how he plead to "the charge of assault in the first degree, on or about October [10] . . . 2016, in violation of General Statutes § 53a-59," the defendant responded, "[n]o contest." See footnote 8 of this opinion.

[7] It is not debatable that today's decision, rather than applying or interpreting existing law, extends the scope of this evidentiary rule at issue. The majority candidly admits as much in footnote 12 of its opinion when it acknowledges that "we have not yet addressed" the issue at hand. The majority resolves a split of authority among our trial courts and finds itself compelled to overrule the older of the two trial court precedents making up that split of authority. Compare *Allstate Ins. Co.* v. *Simansky*, 45 Conn. Supp. 623, 630, 738 A.2d 231 (1998), with *Allstate Ins. Co.* v. *Linarte*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005150-S (May 24, 2007) (43 Conn. L. Rptr. 664, 669). Nor is this a situation in which we are construing the terms of our Code of Evidence to apply to the issue presented. We are not bound by the wording of the rule, as contained either in our Code of Evidence or in our prior case law. As this court has explained, the Code of Evidence "was not intended to displace, supplant or supersede common-law evidentiary rules or their development via common-law adjudication, but, rather, simply was intended to function as a comprehensive and authoritative restatement of evidentiary law for the ease and convenience of the legal community." *State* v. *DeJesus*, 288 Conn. 418, 455, 953 A.2d 45 (2008). This court retains "the authority to modify the common-law rules of evidence codified in the code . . . ." Id., 462.

Allstate Ins. Co. *v.* Tenn

trary, the majority treats the rule codified at § 4-8A (a) (2) as akin to an absolute privilege that cannot be pierced. I do not believe that "the very essence" of the nolo plea itself will be undermined if the defendant's plea is admitted into evidence in the insurance coverage dispute pending in District Court. Nor do I believe that our case law supports the majority's holding.

Like many rules of evidence, the rule that evidence of a conviction based on a plea of nolo contendere is inadmissible is far from absolute. Connecticut courts, courts in other jurisdictions, and our legislature have recognized or created exceptions to § 4-8A (a) (2), or its equivalent, beyond those found in § 4-8A (b) of the Connecticut Code of Evidence.[8] In each of these con-

---

[8] I note that the rule barring the admission of pleas of nolo contendere has been inconsistently phrased, adding to the confusion regarding its scope. For example, under the current state of our law, it is unclear whether this rule applies only when a party seeks to admit a nolo plea "against a person who has entered" into the plea agreement, in this case, the defendant. Conn. Code Evid. § 4-8A (a). By its very terms, § 4-8A (a) bars admission only under those circumstances. See *State* v. *Martin*, 197 Conn. 17, 21 n.7, 495 A.2d 1028 (1985) ("the plea of nolo contendere may not be used *against the defendant* as an admission in a subsequent criminal or civil case" (emphasis added)), overruled in part on other grounds by *State* v. *Das*, 291 Conn. 356, 968 A.2d 367 (2009). This strongly suggests that the plea would be admissible if the individual who entered into the plea agreement was not a party to the subsequent litigation. By contrast, our courts at times have stated the rule more broadly: "[A] prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct." *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 51, 757 A.2d 501 (2000); see also E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.13.5 (c) (2), p. 532 ("A plea of nolo contendere is not a confession of guilt, but just a plea that the accused will not contest the issue of guilt and will be sentenced as a guilty person. . . . [It] is not an admission of guilt and cannot be used as an admission in a later proceeding." (Internal quotation marks omitted.)).

It is also unclear whether this rule applies only when the opposing party seeks to establish the defendant's civil liability, which is not the case here. See *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's, Inc.*, 125 Ohio St. 3d 362, 365, 928 N.E.2d 685 (2010) ("[t]he prohibition against admitting evidence of [no] contest pleas was intended generally to apply to a civil suit by the victim of the crime against the defendant for injuries resulting from the criminal acts underlying the plea"), citing *Allstate Ins. Co.* v.

Allstate Ins. Co. *v.* Tenn

texts, it has been determined that the policy of encouraging plea bargaining should yield to a competing public policy, presumably either because the interest in encouraging plea bargaining has become more attenuated in a particular context or because the competing policy is more powerful.

For example, in *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 757 A.2d 501 (2000), an arbitrator reinstated the employment of "an employee who [had] been terminated following his conviction [of larceny by embezzlement, on] the basis of . . . a plea [of nolo contendere], of embezzling the employer's funds . . . ." Id., 48. Notwithstanding this court's recognition that it had "stated in the context of litigation and administrative rulings that a prior conviction based [on] a nolo contendere plea may have no currency beyond the case in which it was rendered," we held that the arbitration award violated public policy; id., 49; and therefore upheld the trial court's vacatur of the award because "the parties cannot expect an arbitration award approving conduct [that] is illegal or contrary to public policy to receive judicial endorsement . . . ." (Internal quotation marks omitted.) Id., 45, quoting *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339, 555 A.2d 406 (1989). We thereby recognized that the policy favoring nolo pleas as a means of encouraging plea bargaining may give way in some instances when another "strong public policy" is at issue, such as the public policy against embezzlement. (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, supra, 45. This included "the policy that an employer should not be compelled to reinstate an

*Simansky*, 45 Conn. Supp. 623, 628, 738 A.2d 231 (1998); see also J. Kuss, supra, 41 Gonz. L. Rev. 565 (prospect of civil liability does not control course of related criminal proceedings).

employee who has been convicted of embezzling the employer's funds . . . ." Id., 48.

Additionally, in *State* v. *Daniels*, 248 Conn. 64, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005), the defendant appealed from the trial court's revocation of his probation pursuant to General Statutes (Rev. to 1995) § 53a-32, based on his arrest for burglary for breaking into an automobile. *State* v. *Daniels*, supra, 65, 67–68. The state claimed that the defendant's appeal was moot because, after the revocation of his probation, he entered a plea pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to the underlying charge. *State* v. *Daniels*, supra, 69. According to the state, "the trial court [could] grant the defendant no practical relief . . . [because, even] if the court were to agree with the defendant's claims on appeal, [and thus] the defendant [was] granted a new probation revocation hearing . . . the defendant's plea of guilty under the *Alford* doctrine would estop him from asserting his innocence at the new hearing." Id., 70. This court held that the appeal was not moot because, if it reversed the judgment, it could afford the defendant practical relief. See id., 73. Specifically, we concluded that, although the *Alford* plea would be admissible as evidence at a new probation hearing, the trial court would have broad discretion to determine whether to revoke probation, perhaps arriving at a different disposition. See id. ("the defendant's conviction based on his *Alford* plea would establish a violation of the conditions of the defendant's probation"). The trial court's broad discretion necessarily would include consideration of the defendant's *Alford* plea, which meant both that the defendant had been convicted and that he might be innocent of the charged crimes. Thus, although admissible, the defendant's *Alford* plea was not dispositive evidence. This procedure balances two competing pub-

lic policies—encouraging plea bargaining and providing the court with the discretion necessary to ensure that individuals on probation abide by the terms of their release into the community.[9]

Similarly, in *Godin* v. *Godin*, Docket No. FA-93-53345-S, 1995 WL 491420 (Conn. Super. August 8, 1995), aff'd, 43 Conn. App. 918, 684 A.2d 1225 (1996), the trial court prioritized the best interest of the children in a postdissolution matter over the public policy underlying pleas under the *Alford* doctrine. Specifically, after the trial court granted the parties shared custody of their children, the plaintiff entered an *Alford* plea to two counts of sexual assault based on his having had contact with the intimate areas of his two older children. Id., *1–2. The defendant then moved for sole custody premised on this change of circumstances. Id., *2. The trial court granted the motion based on the children's best interest, notwithstanding the nature of the pleas: "The fact that [the plaintiff] entered '[A]*lford*' pleas to these charges does not alter the fact of conviction. The conviction is a material change in circumstances since the divorce was granted and this [c]ourt cannot conclude that the best interest[s] of these children would be facilitated by their [abuser's] being in a custodial position. It is acknowledged that the youngest child was not abused by the husband, but it is logical to assume she could be at risk." Id.

Connecticut is not unique in balancing competing policy considerations in determining the admissibility of a plea of nolo contendere. Other jurisdictions like-

_____

[9] Although the majority is correct that the rules of evidence do not apply in revocation of probation proceedings, the court in *Daniels* nonetheless had to consider the policy implications of admitting pleas of nolo contendere under those circumstances. See *State* v. *Daniels*, supra, 248 Conn. 64. Moreover, the majority fails to acknowledge, let alone respond to, this court's application of a policy balancing test in other circumstances in which the Code of Evidence undoubtedly does apply.

wise have held such pleas admissible when balanced against competing public policies, noting that the policy in favor of pleas of nolo contendere remains intact because the defendant still may assert his or her innocence, as the plea is not dispositive evidence of criminal conduct. See, e.g., *State* v. *Ruby*, 650 P.2d 412, 414 (Alaska App. 1982) (plea of nolo contendere was admissible in revocation of probation proceedings but, consistent with purpose of pleading nolo, admission does not collaterally estop defendant from asserting his innocence); *State ex rel. Oklahoma Bar Assn.* v. *Bradley*, 746 P.2d 1130, 1134 (Okla. 1987) (because of important purpose of regulating attorneys, "the fact that the plea entered was nolo contendere, and not admissible in a civil action would not preclude it from being admitted as evidence in a proceeding in a disciplinary matter against a member of the bar"); *Turton* v. *State Bar*, 775 S.W.2d 712, 715 (Tex. App. 1989, writ denied) (despite rule prohibiting admission of plea of nolo contendere in civil cases against individual who entered plea, rule requiring suspension of attorney's law license for committing serious crime applied regardless of type of plea).

In these cases, our courts and other courts have balanced the competing public policies to determine the admissibility of a plea of nolo contendere. Once admitted, the nolo plea constituted evidence of a conviction, although not an admission to the underlying facts. See, e.g., *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 52 (in holding that nolo plea was admissible, this court concluded that nolo plea "may be viewed, as in the present case, as a conviction for embezzlement of the employer's funds"); *State* v. *Daniels*, supra, 248 Conn. 73 ("the defendant's conviction based on his *Alford* plea would establish a violation of the conditions of [his] probation, thereby significantly lightening the state's burden under the first component, the evidentiary phase, of a new probation revocation hearing"); see

Allstate Ins. Co. *v.* Tenn

also *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574–75 (2d Cir. 1974) (plea used as admission of guilt); *State* v. *Ruby*, supra, 650 P.2d 414 ("allowing use of a no contest plea to establish a violation of law").

Such evidence, however, was not necessarily dispositive of whether the insured committed an intentional or criminal act; rather, the insured had the opportunity to rebut this evidence with competing evidence. See *State* v. *Daniels*, supra, 248 Conn. 73; see also *State* v. *Ruby*, supra, 650 P.2d 414. But if the insured offered no competing evidence, the plea of nolo contendere was sufficient to establish the insured's commission of the crime. See, e.g., *State* v. *Daniels*, supra, 73; see also *State* v. *Ruby*, supra, 414. As a result, courts have applied a burden shifting approach when determining what weight to afford admissible pleas of nolo contendere.

Our legislature has enacted other exceptions to the general rule barring the admission of pleas of nolo contendere. See, e.g., General Statutes § 1-110a (a) (permitting attorney general to apply to Superior Court to revoke or reduce pension of public officials or state or municipal employees who plead nolo contendere to any crime related to state office); General Statutes § 38a-720m (b) (5) (D) (allowing for suspension or revocation of license of third-party administrator after hearing when its agent has plead nolo contendere); General Statutes § 54-1q ("[t]he court shall not accept a plea of guilty or nolo contendere from a person in a proceeding with respect to a violation of section 14-110, subsection (b) or (c) of section 14-147, section 14-215, subsection (a) of section 14-222, subsection (a) or (b) of section 14-224 or section 53a-119b unless the court advises such person that conviction of the offense for which such person has been charged may have the consequence of the Commissioner of Motor Vehicles suspending such person's motor vehicle operator's license"); see also

*Sokoloff* v. *Saxbe*, supra, 501 F.2d 574–75. The majority lumps many of these legislative exceptions together into a category that it labels ''collateral consequences'' of a criminal conviction based on a nolo plea. The majority assures us it recognizes that a criminal defendant cannot fully be protected against every such eventuality. And that is my point. Whether called ''collateral'' or by some other descriptor, these evidentiary consequences are permitted only because it has been determined in that particular circumstance—by a court, legislature or other body—that a more compelling policy outweighs the judicial policy favoring nolo pleas as a way to encourage plea bargaining.

The case before the United States District Court involves an insurer's duty to defend the defendant pursuant to an insurance policy with a criminal acts exclusion; see footnote 2 of this opinion; when the defendant was sued civilly for the same conduct that led to his plea of nolo contendere to an assault charge. Under these circumstances, I find the link between the present dispute in the District Court and the judicial policy of encouraging plea bargaining significantly weaker than the direct link between the criminal forum, in which the defendant pleaded nolo, and the civil forum in which Tailan Moscaritolo, the alleged victim in the underlying incident, sued the defendant. At the same time, recognizing an exception to the general rule of inadmissibility of nolo pleas under the circumstances of this case ensures the vindication of a public policy that competes with—and, in my view, overtakes—the policy of encouraging plea bargaining, namely, the policy of not indemnifying insureds for criminal acts.

To my first point, it is not at all evident that, in an insurance coverage dispute, admitting a defendant's plea of nolo contendere as evidence that he committed a criminal act would necessarily ''undermine the very essence of the nolo contendere plea itself'' and result

Allstate Ins. Co. *v.* Tenn

in less plea bargaining. To just say it would does not make it so. The principal advantage to a defendant of being allowed to plead nolo contendere is that his conviction may not be used as evidence against him in his alleged victim's civil lawsuit for damages. That benefit of his plea bargain would not be upset in the present case by entering the defendant's conviction into the record in the District Court controversy. To prove his case against the defendant in Superior Court, Moscaritolo will still have to prove that the defendant's actions—negligent or intentional—were both actionable and caused his injury and damages.

It is only by chance that the crime the defendant was convicted of committing took place under circumstances that even arguably could be covered by insurance, in this case, under his mother's homeowners insurance policy. Innumerable criminal defendants plead nolo contendere without any hope of insurance coverage. I am not convinced that admitting a defendant's conviction into evidence in a coverage dispute will result in so many fewer plea bargains that it merits excluding relevant evidence from this collateral controversy.

Balanced against what, under these circumstances, is a more attenuated interest in encouraging plea bargains is the shared interest of the public, insurers, and policyholders who pay premiums in not permitting those who commit criminal acts to be indemnified against liability for damages caused by those acts. See, e.g., *Auto Club Group Ins. Co.* v. *Daniel*, 254 Mich. App. 1, 5, 658 N.W.2d 193 (2002) ("as a matter of public policy, an insurance policy that excludes coverage for a person's criminal acts serves to deter crime, while a policy that provides benefits to those who commit crimes would encourage it" (emphasis omitted)); *State Farm Fire & Casualty Co.* v. *Schwich*, 749 N.W.2d 108, 114 (Minn. App. 2008) ("[I]t is against public policy to

Allstate Ins. Co. *v.* Tenn

licens[e] intentional and unlawful harmful act[s]. . . . Minnesota courts have repeatedly declined to find liability coverage for unlawful conduct and serious criminal acts.'' (Citation omitted; internal quotation marks omitted.)); *Litrenta* v. *Republic Ins.*, 245 App. Div. 2d 344, 345, 665 N.Y.S.2d 679 (1997) (''it is contrary to public policy to insure against liability arising directly against an insured from his violation of a criminal statute''); *State Farm Mutual Automobile Ins. Co.* v. *Martin*, 442 Pa. Super. 442, 445, 660 A.2d 66 (1995) (''a person should not be indemnified by insurance against the consequences of his [wilful], criminal assault'' (internal quotation marks omitted)), appeal denied, 544 Pa. 676, 678 A.2d 366 (1996). A minority of jurisdictions have not followed the general rule barring coverage for criminal or intentional acts. ''The more lenient view . . . finds that the public interest in having victims recover for their injuries outweighs the public interest in forcing the [wilful] wrongdoer to pay the consequences of the wrongdoing.'' (Internal quotation marks omitted.) *Grinnell Mutual Reinsurance Co.* v. *Jungling*, 654 N.W.2d 530, 538–39 (Iowa 2002); see id. (discussing minority approach). Other jurisdictions have adopted a multifactor balancing test to determine which of the competing public policies should prevail. See, e.g., id., 539 (''[c]ourts in Florida, Pennsylvania, and Oregon engage in a specific analysis to determine whether coverage of a particular act is against public policy [when] the policy has no intentional-acts exclusion''). Although this court has not expressly adopted either the majority or minority rule, the analysis evident in our case law, at the very least, would prefer a balancing approach. See *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 51–52 (acknowledging general rule at issue but holding that public policy concerns unique to case justified admission of plea of nolo contendere).

In my view, a proper balance of competing public policies supports the admissibility of an insured's con-

viction based on a plea of nolo contendere in a case such as the one certified to us—a declaratory judgment action brought by an insurer to determine the applicability of a criminal acts exclusion in an insurance policy.[10] That is not to say, however, that evidence of the conviction is dispositive of the question of whether the criminal acts exclusion prevails in the case before the District Court. See, e.g., *State* v. *Daniels*, supra, 248 Conn. 73 and n.11 (recognizing admissibility of *Alford* plea in violation of probation proceeding but not determining whether plea constituted conclusive proof of violation of probation); id., 84–86 (*McDonald*, *J.*, concurring) (agreeing that *Alford* plea, which is equivalent to nolo plea, is admissible in violation of probation proceeding but not conclusive of guilt given public policy underlying plea). In other words, the insured could seek to present admissible evidence to contest his or her guilt and, thus, may raise the possibility of coverage, which, in a dispute over the duty to defend, might arguably trigger an insurer's broad duty. See *Nash Street*, *LLC* v. *Main Street America Assurance Co.*, 337 Conn. 1, 9–10, 251 A.3d 600 (2020).[11] In this way, the rule I suggest would vindi-

---

[10] Although the majority is correct that courts in some jurisdictions have held that pleas of nolo contendere are not admissible in insurance policy disputes; see *Safeco Ins. Co. of Illinois* v. *Gasiorowski*, Docket No. 20-3877, 2021 WL 2853255, *3 (E.D. Pa. July 7, 2021); *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's*, *Inc.*, 125 Ohio St. 3d 362, 365, 928 N.E.2d 685 (2010); *Korsak* v. *Prudential Property & Casualty Ins. Co.*, 441 A.2d 832, 834 (R.I. 1982); some of the cases the majority cites did not involve the issue presented here—the admissibility of the nolo plea in the subsequent action—but, instead, concerned whether the nolo plea estopped individuals who entered the pleas from challenging their liability in a subsequent civil action. See *Lichon* v. *American Universal Ins. Co.*, 435 Mich. 408, 431, 459 N.W.2d 288 (1990); *Safeco Ins. Co. of America* v. *Liss*, 303 Mont. 519, 533, 16 P.3d 399 (2000); *Hopps* v. *Utica Mutual Ins. Co.*, 127 N.H. 508, 511, 506 A.2d 294 (1985).

[11] "[T]he duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct actually was covered by the policy. Because the duty to defend is significantly broader than the duty to indemnify, [when] there is no duty to defend, there is no duty to indemnify . . . ." (Emphasis omitted; internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268

Allstate Ins. Co. *v.* Tenn

cate the public policy that disfavors insuring against criminal conduct by requiring the insured to establish at least a possibility of coverage; see *St. Paul Fire & Marine Ins. Co.* v. *Shernow*, 222 Conn. 823, 832, 610 A.2d 1281 (1992) ("[w]here [as here] no finding of an intent to injure has been made, nothing in the public policy of this [s]tate precludes indemnity for compensatory damages flowing from [the] defendant's volitional act" (emphasis omitted; internal quotation marks omitted)); while preserving the defendant's ability to maintain his innocence. See *State* v. *Bridgett*, 3 Conn. Cir. 206, 208–209, 210 A.2d 182 (1965) ("[t]he only basic characteristic of the plea of nolo contendere [that] differentiates it from a guilty plea is that the defendant is not estopped from denying the facts to which he pleaded nolo contendere in a subsequent judicial civil proceeding").

For at least two reasons, this rule would not undermine the "very essence" of the public policy underpinning pleas of nolo contendere: encouraging plea bargaining. First, Moscaritolo still cannot use the defendant's nolo plea in the lawsuit he has brought against him, alleging civil liability premised on the same facts as those underlying the defendant's conviction. See, e.g.,

Conn. 675, 688, 846 A.2d 849 (2004). I note that, although the certified question involves only the duty to defend, my same reasoning would apply in the duty to indemnify context. The plea of nolo contendere would be admissible but not dispositive. Notably, the rule I suggest would not depart from authority presently available on this question. In fact, the last time a federal court certified this question to this court; see *Northfield Ins. Co.* v. *Derma Clinic, Inc.*, 440 F.3d 86, 93 (2d Cir. 2006); the only Connecticut case to address the question held that a conviction based on a plea of nolo contendere is admissible to "trigger" a similar policy exclusion and defeat a duty to indemnify the insured. See *Allstate Ins. Co.* v. *Simansky*, 45 Conn. Supp. 623, 629, 738 A.2d 231 (1998) ("For purposes of the exclusion, the conviction cannot be disregarded as if it did not happen. It did happen, and in so happening triggered the exclusion."). But see *Allstate Ins. Co.* v. *Linarte*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005150-S (May 24, 2007) (43 Conn. L. Rptr. 664, 669).

*Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's,
Inc.*, 125 Ohio St. 3d 362, 365, 928 N.E.2d 685 (2010)
("[t]he prohibition against admitting evidence of [no]
contest pleas was intended generally to apply to a civil
suit by the victim of the crime against the defendant
for injuries resulting from the criminal acts underlying
the plea").

Second, I do not believe that the District Court, by
entering the plea of nolo contendere into evidence in
a declaratory judgment action, would be admitting the
plea "against" the defendant in the way § 4-8A (a) (2)
contemplates. The majority does not appreciate how
the "mere procedural device" of a declaratory judgment
action has skewed its reasoning. (Internal quotation
marks omitted.) *Wilson* v. *Kelley*, 224 Conn. 110, 115–16,
617 A.2d 433 (1992); see id. ("[d]eclaratory relief is a mere
procedural device by which various types of substantive
claims may be vindicated" (internal quotation marks
omitted)).

This failure is revealed most prominently in the major-
ity's statement that it sees "no principled reason to
rigorously enforce the restrictions imposed by § 4-8A
(a) of the Connecticut Code of Evidence on the victim
of a crime in a tort case [i.e., Moscaritolo] while simulta-
neously ignoring that rule for a corporation [i.e., an
insurance company] in a declaratory judgment action
arising out of the very same set of facts." The principled
reason for the distinction, of course, lies in the admitted
purpose of the rule itself: to encourage plea bargaining.
Not surprisingly, this goal is impacted differently by the
two different litigation postures the majority compares.
The purpose of the rule is not implicated directly (or
by its terms, at all) in a declaratory judgment action to
resolve an insurance coverage dispute in the same way
as in an action by the victim against the defendant.
Unlike the victim of the crime, who seeks to establish
the defendant's liability in tort, an insurance company

in a declaratory judgment action seeks a very different remedy: an adjudication of the parties' contractual rights. See, e.g., *Walker* v. *Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) ("We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission [that] would preclude liability. Rule 410 [of the Federal Rules of Evidence] was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil liability. We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts [that] would indicate no civil liability . . . ." (Emphasis omitted.)).

To illustrate this point, consider the sequence of events that would lead to a subrogation action by Moscaritolo against the plaintiff insurer under these facts. When the defendant agreed to plead nolo contendere to a charge of assault in the first degree, Moscaritolo already had sued him in Superior Court. Assume that, after the defendant's plea, Moscaritolo pursued and obtained a judgment against him. If the plaintiff refused to indemnify the defendant for the judgment rendered against him, Moscaritolo would have the right to bring a subrogation action against the plaintiff insurer under General Statutes § 38a-321, standing in the shoes of the insured, the defendant, who would not be a party to that action. Section 4-8A (a) (2) of the Connecticut Code of Evidence prohibits the admission of a plea of nolo contendere only if it is sought to be used "against a person who has entered" the plea. By its terms, the rule would therefore not be implicated in Moscaritolo's subrogation action, and there would be no obstacle to admitting the defendant's nolo plea as evidence in support of the

plaintiff insurer's defense that the criminal acts exclusion of the insurance policy applies.

The fact that, in the subrogation action, Moscaritolo would stand in the defendant's shoes does not alter the outcome because § 38a-321 grants only a subrogation plaintiff the same rights as the insured under the policy—that is, the right to assert "any claim or defense that [the insured] himself could have raised had [the insured] brought suit against [the insurer]." *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 198, 663 A.2d 1001 (1995). A subrogation plaintiff steps into the insured's shoes as to any right of the insured that arises out of the insurance policy but not as to any right that arises *outside of* the insurance policy. See, e.g., id. ("Because [the insured's] right to maintain the confidentiality of communications with his psychiatrist arises under [General Statutes] § 52-146e and not under his contract of insurance with [the defendant], § 38a-321 does not empower [the plaintiff] to waive [the insured's] privilege").

In the present controversy, the defendant's "right" not to have a nolo plea admitted "against" him is not a right contained in the insurance policy at issue in the declaratory judgment action but is a common-law evidentiary rule that is codified in our Code of Evidence. As a result, in a subrogation action under § 38a-321 brought by Moscaritolo against the plaintiff insurer, Moscaritolo could not object to the admission of the defendant's plea of nolo contendere. It is plainly relevant to whether the criminal acts exclusion applies in this case.

The insurer, however, has cut to the chase—responsibly and reasonably—by filing a declaratory judgment action to resolve all parties' rights and obligations, which remain the same regardless of the procedural posture. See *Wilson* v. *Kelley*, supra, 224 Conn. 115–16

Allstate Ins. Co. *v.* Tenn

("[d]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated" (internal quotation marks omitted)). If we prohibit insurers from admitting nolo pleas in declaratory judgment actions such as this case, insurers may decide to deny coverage and to wait for any potential subrogation action under § 38a-321, in which the insured's plea of nolo contendere would, in my view, clearly be admissible. This would defeat the purpose of a declaratory judgment action.

Further, under the regime the majority prescribes, without the benefit of the nolo plea to prove the defendant's criminal actions and the application of the exclusion, the insurance company will be left to parse police reports and to seek cooperation from witnesses to an incident to which it was not a party and that it did not investigate in the first instance.[12] Police officers and

_____

[12] The majority states that the language of the policy—that the exclusion "applies regardless of whether or not such insured person is actually charged with, or convicted of a crime"—makes "either the existence or absence of a criminal conviction contractually irrelevant." (Emphasis omitted.) Text accompanying footnote 11 of the majority opinion. Contractually irrelevant, maybe. But it does not make the existence of the criminal conviction irrelevant *as an evidentiary matter*. Surely, the defendant's conviction of first degree assault makes it "more probable" that he in fact committed a criminal assault, which is clearly "material to the determination of the proceeding": whether the criminal acts exclusion applies. Conn. Code Evid. § 4-1 (defining "relevant evidence"). If the majority means to suggest that insurance companies can solve the admissibility question by using different contract language, such as a criminal acts exclusion that turns explicitly on the existence of a criminal conviction, regardless of how that conviction was obtained, I am not convinced. As long as the majority is sticking to an interpretation of § 4-8A of the Connecticut Code of Evidence that strictly prohibits the admissibility of nolo pleas in subsequent civil proceedings, I do not see how different contract language affects the admissibility of the defendant's plea. Rather, such a change in the policy language might affect whether the plea of nolo contendere was dispositive, even if it were ruled admissible. The defendant conceded as much at oral argument before this court when his counsel agreed that the nolo plea still would be inadmissible even if the policy language were more specific about the criminal acts exclusion applying when there has been a conviction, including a conviction pursuant to a nolo plea.

Allstate Ins. Co. *v.* Tenn

detectives will be subpoenaed, not to a criminal trial or even to the ensuing civil trial brought by the victim, but to an insurance coverage trial at which the insurer stands in the shoes of the prosecutor trying to prove a crime was committed. Even less than the defendant himself, the victim likely would no longer have any interest in proving a crime was committed, which would ensure the application of the exclusion. The truth seeking function will have been turned upside down.[13]

Finally, the majority's insistence on evidentiary equivalency between a tort action brought by a victim and a declaratory judgment action brought by an insurer reveals a determination to advance a very different policy (compensating victims of criminal activity) than that which the rule purports to advance (favoring plea bar-

---

To the extent the majority is suggesting that, by entering into an insurance policy agreement that explicitly excludes coverage when the insured pleads nolo contendere, the insured waives his or her evidentiary right to bar the admissibility of the nolo plea, I do not believe case law is clear on this issue. See C. Paulson, "Evaluating Contracts for Customized Litigation by the Norms Underlying Civil Procedure," 45 Ariz. St. L.J. 471, 515–22 (2013) (noting that some courts have been hesitant to uphold contractual provisions that waive evidentiary rules or alter evidentiary presumptions).

[13] Indeed, the majority candidly alludes to exactly such inverted motivations, with the state at least tacitly complicit: "During the [trial court's] canvass [of the defendant], the prosecutor informed the court that there was a pending civil case filed by the victim, Moscaritolo, against [the defendant] and his mother's insurance company. He further advised the court that [the defendant] was cooperating in that civil lawsuit, and, for that reason, the victim was 'not necessarily seeking much jail time' and that he may be monetarily indemnified for the injuries he suffered." The defendant received a sentence of twelve years of imprisonment, execution suspended after two years, and three years of probation. Inasmuch as the defendant lived with his mother, whose homeowners insurance policy is the policy implicated, it appears clear that it was not the defendant who was going to "monetarily indemnif[y]" Moscaritolo. Moreover, given that the trial court has granted the parties an indefinite continuance in Moscaritolo's civil action during the pendency of the federal declaratory judgment action, it appears clear that part of the resolution of the criminal case, and part of the defendant's cooperation, hinged on seeking restitution through insurance proceeds, thereby in fact costing the insurer and its policyholders, and thereby furthering what public policy disfavors: the indemnification of criminal acts.

Allstate Ins. Co. *v.* Tenn

gaining). A policy that favors compensating victims of
crime may be a laudable one, and our state has enacted
a number of provisions to advance this policy, including
the victim's rights amendment to the state constitution
and subsequent enforcement legislation. See Conn.
Const., amend. XXIX (b) (9) ("the right to restitution");
General Statutes § 54-215 ("Office of Victim Services
shall establish a Criminal Injuries Compensation Fund
for the purpose of funding the compensation services
provided for by sections 54-201 to 54-218, inclusive").
Annexing this policy to § 4-8A of the Connecticut Code
of Evidence, which was intended to facilitate plea bar-
gaining, and enforcing it in an insurance contract dis-
pute, requires us to import far more in the way of policy
into this rule than a mere evidentiary rule should—or
in my view, was intended to—bear. "Connecticut law
has long upheld policy exclusions that have the effect
of depriving an innocent victim of the benefit of the
tortfeasor's liability insurance." *Allstate Ins. Co.* v. *Siman-
sky*, 45 Conn. Supp. 623, 627, 738 A.2d 231 (1998). I
would leave the balancing of any further implications
and impacts—to victims, insureds, insurers and policy-
holders whose premiums are affected—to the legis-
lature.

As a result, I believe that, under our current case law,
the defendant's plea of nolo contendere is admissible
in the present case to prove his conviction and as an
opposing party statement that he did not contest the
criminal complaint charging him with first degree
assault. See footnote 6 of this opinion. Although the policy
exclusion at issue does not require that the defendant
be "charged with, or convicted of a crime"; see footnote
2 of this opinion; the fact of the conviction and his
admission that he did not contest the criminal charges
against him are at least relevant to whether he commit-
ted an "intentional or criminal [act] . . . ." See id. It
is for the fact finder to determine the weight of this

Allstate Ins. Co. *v.* Tenn

evidence. The defendant, however, may offer competing evidence to establish his innocence. Thus, in the present case, depending on that competing evidence, he may be able to establish that there is at least a material issue of fact as to whether he has established a possibility of coverage, thereby triggering the plaintiff's duty to defend.

Because I disagree with the majority's balancing of these competing public policy concerns, I therefore respectfully dissent from the majority's holding that the defendant's plea of nolo contendere is inadmissible but concur insofar as the majority concludes that his plea does not necessarily trigger the policy's criminal acts exclusion.